**UNITED STATES of America,**
**Appellant,**

v.

**Baron deHirsch MEYER, Leonard L.**
**Abess, W. George Kennedy and**
**Sam R. Becker, Appellees.**

**No. 17371.**

United States Court of Appeals
Fifth Circuit.

May 5, 1959.

Rehearing Denied July 20, 1959.

James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

Chester Bedell, Jacksonville, Fla., George F. Gilleland, W. Sanders Gramling, W. G. Ward, William C. Steel, J Edward Worton, William Manker, Miami, Fla., for appellees. Ward & Ward, Miami, Fla., Bedell & Bedell, Jackson-

ville, Fla., Scott, McCarthy, Preston, Steel & Gilleland, Worton & Manker, Miami, Fla., of counsel.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment sustaining a motion to dismiss an indictment of twenty-one counts, which occupy forty-seven pages of the printed record.

Count one of the indictment is drawn under the general conspiracy statute, Title 18 United States Code § 371, proscribing a conspiracy "either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose." It charges that the four named defendants together with Nathaniel B. Elkins, named as co-conspirator but not defendant, conspired to violate Title 18, Sections 656, 657, and 1006 of the United States Code in the manner and by the means set forth in the count.

Section 656 of Title 18 makes it a criminal offense for an officer, director or agent of a Federal Reserve bank, member bank, national bank or insured bank to embezzle, abstract, purloin or *wilfully misapply* any of the moneys, funds or credits of such bank. Section 657 proscribes the like offense when committed against an institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation. Section 1006 makes criminal the act of an officer, agent or employee who, with intent to defraud any such institution or to deceive any auditor or examiner or agency of the United States, makes any false entry in any book, report or statement of or to any such institution, or who, with intent to defraud the United States or any agency thereof, participates or shares in or receives directly or indirectly any money, profit, property or benefits through any transaction, loan, commission, contract or any other act of such institution.

Substantially following the language of those three sections, count one describes the banks and financial institutions and the positions in such banks and institutions held by each of the four defendants, and charges them and the co-conspirator with conspiring:

"(a) to wilfully misapply and wilfully cause to be misapplied moneys, funds and credits of the Industrial Savings Bank, the Industrial National Bank and North Shore Bank to the use, benefit and advantage of the said defendants so that the said moneys, funds and credits would be withdrawn from and lost to the said banks during the period that the said moneys, funds and credits were beyond the control of the said banks, with intent to injure and defraud the said banks;

"(b) to wilfully misapply and wilfully cause to be misapplied moneys, funds and credits of the said Miami Beach Federal Savings and Loan Association to the use, benefit and advantage of the said defendants so that the said moneys, funds and credits would be withdrawn from and lost to the said Miami Beach Federal Savings and Loan Association during the period that the said moneys, funds and credits were beyond the control of the said Association, with intent to injure and defraud the said Miami Beach Federal Savings and Loan Association;

"(c) to make and cause to be made false entries in the books and statements of the Miami Beach Federal Savings and Loan Association and to make and cause to be made material false statements in the reports of the said Association with intent to defraud the said Miami Beach Federal Savings and Loan Association and to deceive the officers, auditors, examiners and agents of the Home Loan Bank Board and the Federal Home Loan Bank Board, Departments and

Agencies of the United States of America;

"(d) to participate and share in and receive directly and indirectly money, profits, property and benefits through transactions and loans of the said Miami Beach Federal Savings and Loan Association, with the intent to injure and defraud the Federal Savings and Loan Insurance Corporation and Miami Beach Federal Savings and Loan Association."

Those allegations are followed by a paragraph which contains the count's only reference to 12 U.S.C.A. §§ 371 or 371c mentioned by the district court in assigning its reasons for dismissing count one, and which paragraph is therefore quoted:

"That it was a further part of the said conspiracy for the defendants, who maintained control over the operations of the North Shore Bank to knowingly and wilfully allow and permit the said institution to lend money to the corporations named in paragraphs 5, 6 and 7 herein in a manner and means not permitted under the Federal Banking Laws, to wit, Title 12 U.S.C.A., Section 371c, in that such loans would not be secured by the collateral required by that section; moreover that such loans would be caused to be made, without disclosing to said bank that said loans involved no bonafide transactions of the said borrower, but that said loans would be used for the purpose of temporarily repaying loans to Federal Title and Insurance Corporation in order temporarily to improve the financial position of said corporation, and without disclosing that the proceeds of said loans were to be converted to the use of the defendants through Federal Title and Insurance Corporation."

As would be gathered from that reference to Title 12 U.S.C.A. § 371c, it prescribes the kind of collateral which must secure a loan or extension of credit from a member bank to one of its affiliates. Violation of that section is not, however, made a criminal offense.

The paragraph last quoted is followed by four other paragraphs each, like the quoted paragraph, beginning with the words, "That it was a further part of said conspiracy * * *" To facilitate an understanding of this opinion, we quote the opening clauses of each of those four paragraphs:

"That it was a further part of the said conspiracy for the defendants who maintained control of the said Industrial National Bank, North Shore Bank and Miami Beach Federal Savings and Loan Association to knowingly and wilfully allow and permit the said financial institutions to lend money to builders who were engaged in construction work on properties upon which the defendants had a financial interest * * *.

"That it was a further part of the said conspiracy for the defendants, acting through one of the corporations named in paragraphs 5, 6 or 7 [1] to cause one of those corporations and/or builders to borrow funds from Industrial Savings Bank, Industrial National Bank, North Shore Bank and Miami Beach Federal Savings and Loan Association, which funds would be used by the said defendants for their own personal use and gain * * *

---

1. Paragraphs 6 and 7 name six corporations, the sole stockholder of which is Federal Title and Insurance Corporation, and two corporations, 96% of the stock of which is owned by Federal Title & Insurance Corporation. Paragraph 5 further alleges: "that a majority of the Board of Directors of said Federal Title and Insurance Corporation from September 4, 1952, through December 31, 1956, consisted of Abess, Meyer and Kennedy, who also maintained control over the corporations named in Paragraphs 6 and 7 hereinafter set forth."

"That it was a further part of the said conspiracy to make and cause to be made false entries in the books, reports and statements of the Miami Beach Federal Savings and Loan Association in that the said defendants would have the responsibility and duty of approving applications for construction loans from Miami Beach Federal Savings and Loan Association and would knowingly and wilfully fail to disclose to the Miami Beach Federal Savings and Loan Association on such applications that there was in existence an unrecorded purchase money mortgage from the applicant for construction loans to one of the corporations named in paragraphs 5, 6 or 7 herein * * *

"That it was a further part of the said conspiracy for the defendants to participate and share in and receive directly and indirectly moneys, profits, property and benefits to transactions and loans of the Miami Beach Federal Savings and Loan Association wherein the said defendants approved and caused to be approved loans to builders from Miami Beach Federal Savings and Loan Association upon property in which the defendants had and which the defendants would have a financial interest * * * *"

Count one closes with the averment of the commission of certain overt acts in furtherance of the alleged conspiracy.

The district court expressed its reasons for sustaining the motion to dismiss count one as follows:

"The conspiracy count (count one) presents some difficulty. The first two statutory criminal offenses which the defendants are alleged to have conspired to commit are those defined by 18 U.S.C.A. Sections 656 and 657. The language of each statute was followed precisely in charging the defendants with a conspiracy 'to wilfully misapply and wilfully cause to be misapplied moneys,' etc.

of the named banks,—'with intent to injure and defraud the said banks.'

"Recognizing that the phrases 'to wilfully misapply' and 'wilfully cause to be misapplied' are generic terms having no settled, technical meaning, United States v. Cawthon, D.C., 125 F.Supp. 419, the Grand Jury proceeded to spell out the quo modo of misapplication.

"It is the Court's opinion that the Grand Jury fell into the error of supposing that any use or disposition of the moneys or funds of a 'National' or 'Member bank' in any manner or for any purpose proscribed by the Federal Reserve Act, as amended, and more particularly by the provisions of 12 U.S.C.A. Sections 371 and 371c, constitutes a criminal offense. These sections do not of themselves create any offense against the United States. Therefore, on the authority of United States v. Britton, 108 U.S. 199, 2 S.Ct. 531, 27 L.Ed. 698, the alleged acts of defendants in violations of these sections do not amount to criminal misapplication of moneys or funds, although they may raise the question of maladministration."

At the outset we are confronted with a question of jurisdiction, that is whether the appeal from the judgment dismissing count one is properly taken to this Court or should have been taken direct to the Supreme Court of the United States under the Criminal Appeals Act, Title 18 United States Code § 3731. The original Criminal Appeals Act provided for appeals by the United States directly to the Supreme Court from a judgment dismissing an indictment or any count thereof where the judgment was based upon the invalidity or construction of the statute upon which the indictment or count was founded, or where the judgment sustained a motion in bar before the defendant had been put in jeopardy. In 1942, the Act was amended to confer jurisdiction on the courts of appeals in such cases "except

where a direct appeal to the Supreme Court of the United States is provided by this section." [2] The distinction is that such an appeal involving a matter of substance, the validity or construction of the statute on which the count is founded, or a motion in bar, goes to the Supreme Court; whereas, an appeal involving a matter of procedure or question of pleading goes to the court of appeals.[3] If the district court held that the count, not merely because of some deficiency in pleading but with respect to the substance of the charge, does not allege a violation of the statutes upon which it is founded, then the appeal goes direct to the Supreme Court.[4] If the district court based its decision on a mere defect in pleading, then this Court has jurisdiction of the appeal.

Thus, solution of the jurisdictional question requires us to determine the basis of the district court's judgment. The difficulty which we have encountered prompts us to repeat the wise suggestion of Mr. Justice Jackson in his concurring opinion in United States v. Swift & Co., 1943, 318 U.S. 442, 446, 63 S.Ct. 684, 686:

> " * * * In connection with the difficult problems that come up as a result of a dual appeal we would be greatly aided if the District Courts in dismissing an indictment would indicate in the order the ground, and if more than one, would separately state and number them. I am confident that a request from the Government to do so would generally be granted and that to do so

would be of assistance to the Government in taking and to us in passing on, appeals."

In urging that the appeal should have been taken directly to the Supreme Court, the appellees emphasize the concluding sentence of the district court's reasoning, which we have heretofore quoted in full. Read in context, the meaning of that sentence depends upon the words "these sections," and the sections referred to are Sections 371 and 371c of Title 12 U.S.C.A. Those sections are not among the statutes upon which the count is founded.

The statute upon which a count is founded is "to be determined as a matter of law from the facts therein charged." United States v. Nixon, 1914, 235 U.S. 231, 235, 35 S.Ct. 49, 50, 59 L.Ed. 207.

> " * * * The statute, at the violation of which the conspiracy is aimed, has been treated as the statute upon which the indictment is founded within the meaning of the Criminal Appeals Act. United States v. Bowman, 260 U.S. 94, 95, 43 S.Ct. 39, 67 L.Ed. 149; United States v. Walter, 263 U.S. 15, 16, 17, 44 S.Ct. 10, 68 L.Ed. 137. See, also, United States v. Keitel, 211 U.S. 370, 387, 29 S.Ct. 123, 53 L.Ed. 230." United States v. Kapp, 1937, 302 U.S. 214, 216, 58 S.Ct. 182, 184, 82 L.Ed. 205.

The Government agrees with the district court that Title 12 U.S.C.A. §§ 371 and 371c do not of themselves create any offense against the United States. If, then, the district court construed

---

2. The original act is quoted in United States v. Borden Co., 1939, 308 U.S. 188, 192, footnote 1, 60 S.Ct. 182, 84 L.Ed. 181. The purpose and legislative history of the 1942 amendment conferring jurisdiction on the courts of appeals are recounted in United States v. Swift & Co., 1943, 318 U.S. 442, 444, 445, 63 S.Ct. 684, 87 L.Ed. 889.

3. Moore's Commentary on the United States Judicial Code, pp. 483, 484.

4. See, United States v. Keitel, 1908, 211 U.S. 370, 385, 29 S.Ct. 123, 53 L.Ed. 230; United States v. Corbett, 1909, 215

U.S. 233, 237, 30 S.Ct. 81, 54 L.Ed. 173; United States v. Heinze, 1910, 218 U.S. 532, 540, 31 S.Ct. 98, 54 L.Ed. 1139; United States v. Patten, 1913, 226 U.S. 525, 535, 33 S.Ct. 141, 57 L.Ed. 333; United States v. Birdsall, 1914, 233 U.S. 223, 230, 34 S.Ct. 512, 58 L.Ed. 930; United States v. Nixon, 1914, 235 U.S. 231, 235, 236, 35 S.Ct. 49, 59 L.Ed. 207; United States v. Wayne Pump Co., 1942, 317 U.S. 200, 206, 207, 63 S.Ct. 191, 87 L.Ed. 184; United States v. Hvass, 1958, 355 U.S. 570, 574, 78 S.Ct. 501, 2 L.Ed.2d 496.

only Sections 371 and 371c of Title 12, and its construction of these sections is conceded to be proper, a direct appeal to the Supreme Court would be meaningless, for the Supreme Court's jurisdiction in such cases "is limited to the construction of the statute involved." United States v. Hood, 1952, 343 U.S. 148, 150, 72 S.Ct. 568, 569, 96 L.Ed. 846; United States v. Petrillo, 1947, 332 U.S. 1, 5, 67 S.Ct. 1538, 91 L.Ed. 1877; United States v. Borden Co., 1939, 308 U.S. 188, 193, 60 S.Ct. 182, 84 L.Ed. 181.

So also at this late date no substantial question can be raised but that the words "wilfully misapplies" as used in Sections 656 and 657 of Title 18 United States Code, mean a criminal misapplication rather than a mere act of maladministration. United States v. Britton, 1883, 108 U.S. 199, 206, 2 S.Ct. 531, 27 L.Ed. 698. As said in the earlier Britton appeal, 1882, 107 U.S. 655, 668, 2 S.Ct. 512, 523, 27 L.Ed. 520, "it must be a willful misapplication for the use or benefit of the party charged, or of some person or company other than the association, with intent to injure and defraud the association or some other body corporate, or some natural person." An appeal to the Supreme Court is not needed to have repeated this long-settled construction of the term "wilfully misapplies."

The district court in effect held that the single reference to Section 371c of Title 12 U.S.C.A. operated to refute all of the charges of wilful misapplication of moneys, funds and credits. We construe its holding to be in effect procedural, or based on a claimed defect in pleading, rather than upon the construction of any of the statutes upon which the count is founded, and, therefore, conclude that this Court has jurisdiction of the appeal from the dismissal of count one.

■ Very clearly, the single reference to Section 371c of Title 12 U.S.C.A. does not prevent the count from charging a criminal conspiracy. The several other paragraphs beginning with the words, "That it was a further part of said conspiracy," contain no reference to that section. That the count charges a wilful, criminal misapplication of funds is shown by the definite charge in paragraphs lettered (a) and (b), heretofore quoted, that the misapplication was "to the use, benefit and advantage of the said defendants" and "with intent to injure and defraud the said banks" and, respectively, "the said Miami Beach Federal Savings and Loan Association."

Neither Section 371c of Title 12 U.S.C.A., nor the meaning of the term "wilfully misapplied," has even a remote connection with those parts of the count which charge a conspiracy to violate Section 1006 of Title 18 United States Code. Compare United States v. Britton, supra, 107 U.S. at pages 663–665, 2 S.Ct. at page 518.

■ The appellees insist, however, that the averments of the count are otherwise insufficient to charge a conspiracy to violate Section 1006. The prohibition of false entries by that section is in broad and comprehensive terms. Compare United States v. Britton, supra, 107 U.S. at page 663, 2 S.Ct. at page 518, et seq.; 9 C.J.S. Banks and Banking § 149(a). Knowingly and wilfully representing that a proposed construction loan was legitimate by *failing* to disclose on a loan application to one of the financial institutions named in Section 1006 an unrecorded mortgage from the applicant to a corporation owned and controlled by the defendants, or by giving a negative answer to some questionnaire, when made with the requisite intent to defraud the lending institution or to deceive the auditors and examiners or a Government agency, would clearly constitute a false entry in a report or statement to the institution.[5]

5. Appellees miss the point of the fraud and deceit charged when they argue that the unrecorded mortgage must have constituted a lien effectual as to the lending institution. The fraud and deceit charge consisted in the concealing by the defendants of their interest in the transaction.

■ Appellees complain that the reviser of the 1948 revision of the criminal code combined some eleven sections of the 1940 Code to create Section 1006 and, in so doing, made the "participation" provisions of certain other sections applicable to federal savings and loan associations, but made no mention in the Revisers' Notes of the fact that the revised section created new criminal offenses. Without stopping to substantiate the details of that contention, it is enough to say that the language of Section 1006 clearly and unmistakably expresses an intention to make the "participation" provisions apply to each kind of institution named in the section; and that the authorities relied on by the appellees have no application when the intention expressed in the section itself is clear. Fourco Glass Co. v. Transmirra Products Corp., 1957, 353 U.S. 222, 227, 77 S.Ct. 787, 1 L.Ed.2d 786; Anderson v. Pacific Coast S. S. Co., 1912, 225 U.S. 187, 199, 32 S.Ct. 626, 56 L.Ed. 1047.

We find no merit in any of the appellees' criticisms of count one of the indictment, and conclude that the district court erred in sustaining the motion to dismiss said count.

Counts two through twenty-one, inclusive, charge all or certain of the four defendants with substantive violations of one or more of the same sections 656, 657, or 1006 of Title 18 United States Code.

The district court dismissed each of those counts for duplicity, saying:

"As previously indicated in the course of oral arguments, the Court is of the opinion that unintentionally and inadvertently, the Grand Jury, by re-alleging each of the allegations of paragraphs 1 through 14 of the

first count of the indictment imported into the subsequent substantive counts (two through twenty-one) dual charges of a conspiracy and the violation of a statute creating a substantive offense. Because of duplicity each of such counts is subject to the motion to dismiss."

■ As the language of Section 3731, Title 18 United States Code, indicates, its application requires that the dismissal of each count of the indictment be considered separately. United States v. Borden Co., 1939, 308 U.S. 188, 193, 60 S.Ct. 182, 186, 84 L.Ed. 181. In that case it was held that a direct appeal to the Supreme Court was not provided from a decision dismissing one of the counts held bad upon the ground "that it is defective as a pleading, being duplicitous * * *." Clearly, therefore, this Court has jurisdiction of so much of the appeal as involves the dismissal of the substantive counts, counts two through twenty-one, inclusive.

Paragraph numbered 1 of each of these substantive counts is identical:

"1. The Grand Jury realleges each of the allegations of Paragraphs 1 through 14 of the first count of this indictment." [6]

■ The district court construed that paragraph as importing into each of the substantive counts the entire first count of the indictment. If that were the meaning then there was no purpose in particularizing "paragraphs 1 through 14." Clearly, the Grand Jury meant to reallege something less than all of the first count of the indictment.[7] We find ourselves in complete agreement with the succinct refutation of the charge of duplicity contained in the Government's brief.[8]

---

6. Rule 7, Federal Rules of Criminal Procedure, 18 U.S.C., expressly provides that, "Allegations made in one count may be incorporated by reference in another count."

7. Indeed the district court itself, somewhat paradoxically we think, characterizes its construction of the indictment by the phrase that " * * * unintentionally

and inadvertently, the Grand Jury, etc. * * * "

8. "Examination of the indictment reveals that paragraphs one through fourteen of the first count of the indictment set out certain preliminary facts, identifying the financial institutions involved in the case, the federal agencies with which they were affiliated, the positions held by each

The appellees urge upon us, however, that they are not restricted to sustaining the defect of duplicity but that,

"* * * It is a rule applicable to appeals in criminal as well as civil cases that 'a successful party in the District Court may sustain its judgment on any ground that finds support in the record.' Jaffke v. Dunham, 1957, 352 U.S. 280, 281, 77 S. Ct. 307, 308, 1 L.Ed.2d 314; United States v. Curtiss-Wright Export Corporation, 1936, 299 U.S. 304, 329, 330, 57 S.Ct. 216, 225, 81 L.Ed. 255; United States v. Kahriger, 1953, 345 U.S. 22, 33 (Footnote 14), 73 S.Ct. 510, 516, 97 L.Ed. 754; Posey v. Tennessee Valley Authority, 5 Cir., 1937, 93 F.2d 726."

We agree with that principle and proceed to examine the other grounds of the motions to dismiss these substantive counts.

of the four defendants in such financial institutions, the relationship of certain subsidiary corporations to another corporation, namely, Federal Title and Insurance Corporation, and finally in separate paragraphs (11, 12, 13 and 14) the percentage of stock ownership of each of the four defendants in Federal Title and Insurance Corporation. Paragraph 14 of count one consists of a single sentence and a single allegation of fact:

"'14. That from on or about April 27, 1951, and continuing through December 31, 1956, Sam R. Becker owned approximately 7% of the outstanding stock of Federal Title and Insurance Corporation.'

"After Paragraph 14, and separated from it by a double space there come the standard words: 'The Grand Jury further charges.'

"Thereafter there appears the charging portion of the conspiracy count setting forth the time, place, and venue, the statutes involved, the manner and means of the conspiracy and certain overt acts. This portion of count one consists of eight main paragraphs each double spaced and indented from the text above. Some of these paragraphs include lettered sub-paragraphs.

"Counts two through twenty-one each contain an identical first paragraph which in standard form realleges the preliminary facts set forth in paragraphs one through fourteen in Count I.

"In view of the physical arrangement of the text of count one and the whole indictment, the indentation of paragraphs, the double spacing between paragraphs, the interjection of the familiar phrase 'The Grand Jury further charges' which separates paragraphs 14 and the paragraphs which follow it, the obvious difference in thought content and subject matter between paragraph 14 and the charging paragraphs below, it is difficult to follow the reasoning of the Court below that the reiteration in each of the subsequent counts of Paragraphs 1–14 of Count one had the force and effect of tacking on to each of the remaining twenty counts the conspiracy count set forth in count one.

"The reiteration of preliminary facts or allegations in subsequent counts of an indictment, as occurred here, is standard practice; it encourages brevity and clarity; it aids in focusing attention on the main thrust of the separate count or cause of action. Such was the intent in the use of this technique in counts two through twenty-one of this indictment. "* * * * * *

"To hold that the numbered paragraph 14 of count one must of necessity incorporate all of the remaining unnumbered paragraphs of the count ignores the physical arrangements of the pleading, the settled meaning of the word 'paragraph,' and the effect of the statement 'The Grand Jury further charges' which separates paragraphs 1–14 from the remaining content in count one.

"At best the fact that the paragraphs of count one beyond paragraph 14 were not numbered, can only be considered as a technical point. And the strict technical requirements of pleading have been replaced by a liberality of construction permitted by the Federal Rules of Criminal Procedure.

"Federal Rules of Criminal Procedure 7 and 52a. (See also Rule 2.) Moreover, the adequacy and sufficiency of indictments can in modern times be considered on the basis of practical, as opposed to technical considerations. Hagner v. U. S., 285 U.S. 427, 431 [52 S. Ct. 417, 76 L.Ed. 861]; United States v. Achtner [2 Cir.], 144 F.2d 49, 51; Anderson v. United States [6 Cir.], 215 F.2d 84, 86–87; Beard v. United States [65 App.D.C. 231], 82 F.2d 837, 840; Johnson v. United States [5 Cir.], 207 F.2d 314, 319. (See, also, United States v. Debrow, 1953, 346 U.S. 374, 378 [74 S.Ct. 113, 98 L.Ed. 92].)"

Counts two through ten, inclusive, charge substantive violations of Title 18 United States Code § 656, against two of the defendants, Meyer and Abess. Count two is typical and we quote its averments in full:

## "Count Two

"The Grand Jury further charges:

"1. The Grand Jury realleges each of the allegations of Paragraphs 1 through 14 of the first count of this indictment;

"2. That on or about the 29th day of December, 1954, in Dade County, Southern District of Florida,

"Baron DeHirsch Meyer and Leonard L. Abess, defendants herein, being then and there members of the Executive Committee, the Loan and Discount Committee and directors of the North Shore Bank, said bank being then and there a state bank authorized and existing under the laws of the State of Florida and insured by the Federal Deposit Insurance Corporation under Certificate No. 16497 and a member of the Federal Reserve System, and said defendants further being stockholders and directors of the Federal Title and Insurance Corporation, the majority directors of said Federal Title and Insurance Corporation being directors of said North Shore Bank, with intent to defraud said North Shore Bank, did wilfully misapply and cause to be misapplied moneys, funds and credits of and intrusted to the custody and care of said North Shore Bank, in the following manner: the defendants herein caused said North Shore Bank to make a loan and extend credit of $80,000 to Austin-Scott, Inc., a corporation whose stock was wholly owned by the Federal Title and Insurance Corporation and an affiliate of said North Shore Bank within the terms of 12 U.S.C.[A. §] 221a(b) (8) as the defendants well knew, without requiring adequate security for said loan and credit, without the prior approval of the Board of Directors of said North Shore Bank, at a low rate of interest, without disclosing to said bank the affiliation between the borrower and said bank, without disclosing to said bank that said loan and credit was related to no legitimate transaction engaged in by said borrower, without disclosing to said bank that the loan was to be used and was used by said borrower for the purpose of repaying a loan made by the Federal Title and Insurance Corporation to said borrower so that the financial cash condition of said Federal Title and Insurance Corporation could be temporarily improved, without disclosing to said North Shore Bank that the proceeds of said loan would be and were used by Austin-Scott, Inc. to repay a loan which it had received from its parent corporation, Federal Title & Insurance Corporation, and that the only means by which Austin-Scott, Inc. could repay the unsecured loan from the North Shore Bank would be by obtaining the necessary funds from said Federal Title & Insurance Corporation, all this being done before the Board of Directors of the North Shore Bank approved the loan to Austin-Scott, Inc., without disclosing to said North Shore Bank the inadequate financial condition of said Austin-Scott, Inc., which fact further jeopardized the money, funds and credits of the North Shore Bank, without disclosing to said North Shore Bank that the actual beneficial recipient of the loan and credit was the Federal Title and Insurance Corporation and that the proceeds of the loan were converted to the use of the defendants for their own personal gain through said Federal Title and Insurance Corporation, the entire purpose of said loan transaction being in bad faith, in violation of sound banking

practice, brought about only by the influence of said defendants in said North Shore Bank, against the interests of the North Shore Bank and made only to serve the personal interests of said defendants, and calculated to defraud and injure said North Shore Bank; in violation of 18 U.S.C. [§] 656."

A majority of the judges of the panel deciding this case are of the opinion that counts two through ten are adequate to charge violations of 18 U.S.C. § 656 and to apprise the defendants of the accusations in such manner as to permit them to prepare their defenses and to protect them against another prosecution on the same charges. The writer thinks that counts two through ten are bad on motion to dismiss, and expresses his views in the marginal footnote.[9]

■ Counts eleven and twelve charge that the defendant Becker violated Title 18 United States Code § 1006 by submitting to an examiner material false reports of the Miami Beach Federal

Savings and Loan Association with intent to deceive the examiner. Those counts definitely describe the statements, the particulars of their alleged falsity, and charge that at the time of submitting the reports to the examiner the defendant Becker knew of such falsity. They sufficiently charge each element of the false report offense defined in Section 1006.

■ Counts thirteen through seventeen, inclusive, charge substantive violations of Title 18 United States Code § 657 against all four defendants. The manner of the alleged misapplication of moneys, funds and credits is similarly alleged in each of these counts and, as typical, we quote such averments of count thirteen:

" * * * the defendants herein did approve a construction loan to Audubon Homes, Inc. in the amount of $547,400 on the security of certain real estate, the defendants then and there well knowing that there was in existence a prior purchase

---

9. RIVES, Circuit Judge, briefly in dissent:

Upon timely objection by motion to dismiss, a defendant can insist upon defects and imperfections in an indictment which might be waived or cured if he waited until after verdict. United States v. Williams, 5 Cir., 1953, 202 F.2d 712, 713; same case 203 F.2d 572, 573; Vasquez v. United States, 5 Cir., 1956, 229 F.2d 288, 289; 42 C.J.S. Indictments and Informations, § 301; 27 Am.Jur., Indictments and Informations, § 187. The mere legal conclusions at the end of the counts (See Clay v. United States, 5 Cir., 1955, 218 F.2d 483, 486), and the matters alleged only indirectly or impliedly in the clauses which begin "without disclosing that" (United States v. Williams, supra; Robertson v. United States, 5 Cir., 1948, 168 F.2d 294; United States v. Lamont, D.C.S.D.N.Y. 1955, 18 F.R.D. 27, 30, affirmed 2 Cir., 1956, 236 F.2d 312; 4 Barron's Federal Practice & Procedure, Rules Edition, § 1914, p. 67; 4 Wharton's Criminal Law and Procedure, § 1762; 42 C.J.S. Indictments and Informations § 99; 27 Am. Jur., Indictments and Informations, § 57.) should not be considered in determining the sufficiency of the counts on motion to dismiss. Otherwise, the con-

stitutional requirement of indictment by a Grand Jury contained in Amendment 5, and the requirement of Amendment 6 (See United States v. Cruikshank, 1875, 92 U.S. 542, 557, 558, 23 L.Ed. 588.) that the accused "be informed of the nature and cause of the accusation" might be eroded. Such averments as "without requiring adequate security" and "at a low rate of interest" are so indefinite as to leave the standard of guilt to the variant views of different juries. Compare United States v. Cohen Grocery Co., D.C. E.D.Mo.1920, 264 F. 218, 220, affirmed 1921, 255 U.S. 81, see pages 89, et seq., 41 S.Ct. 298, 65 L.Ed. 516. Rule 7(c) of the Federal Rules of Criminal Procedure still requires "a plain, concise and definite written statement of the essential facts constituting the offense charged." If we eliminate from counts two through ten the legal conclusions, the indirect expressions and implied allegations, and the averments of matters of opinion, sufficient plain and definite statements of facts are not left to constitute a wilful misapplication within the requirements of United States v. Britton, 1882, 107 U.S. 655, 668, 2 S.Ct. 512, 27 L.Ed. 520; same case, 1883, 108 U.S. 199, 206, 2 S.Ct. 531, 27 L.Ed. 698.

money mortgage on said real estate from Audubon Homes, Inc. to Federal Title and Insurance Corporation, a corporation in which the defendants were directors and had a financial interest, said real estate having been sold to Audubon Homes, Inc. by Federal Title and Insurance Corporation, which purchase money mortgage was not subordinated to said construction loan mortgage held by the Miami Beach Federal Savings and Loan Association, and which purchase money mortgage was not disclosed to the Miami Beach Federal Savings and Loan Association, thereby causing the security of said Association to be inferior and not a first lien as required by Statute to the said purchase money mortgage and jeopardizing the money funds and credits of Miami Beach Federal Savings and Loan Association and to the benefit of said defendants, and further, said loan was made in disregard of the inadequate financial condition of said Audubon Homes, Inc. and under circumstances whereby losses which might result from the construction activities of Audubon Homes, Inc. financed by the aforesaid construction loan would fall first on Miami Beach Federal Savings and Loan Association, whereas the defendants and corporations in which they held large interests as stockholders would derive large profits in the event the business transactions financed by said loans were successful, the entire purpose of said loan transaction being in violation of sound banking practice, against the interest of said Miami Beach Federal Savings and Loan Association and to the person-al interest of said defendants, in bad faith, brought about only because of the influence of said defendants in the Miami Beach Federal Savings and Loan Association, and calculated to injure and defraud the Miami Beach Federal Savings and Loan Association * * *."

A majority of the judges of the panel deciding this case are of the belief that counts thirteen to seventeen, inclusive, sufficiently allege the misapplication of funds of a savings and loan association by the investment in mortgages which were not first liens. The writer, believing otherwise, expresses his views in the marginal footnote.[10]

Counts eighteen through twenty-one, inclusive, charge substantive violations of Title 18 United States Code § 1006 against all four defendants. Count eighteen is typical. It charges that the defendants,

"* * * then and there being officers, agents and employees of the Miami Beach Federal Savings and Loan Association, did participate and share in and receive indirectly through Federal Title and Insurance Corporation money, profit, property and benefits, to-wit: the sum of $27,000 in the name of Federal Title and Insurance Corporation, through a loan from Miami Beach Federal Savings and Loan Association to Vivian J. Inc., in the sum of $293,750, with intent to defraud the Miami Beach Federal Savings and Loan Association, in violation of Title 18, United States Code, Section 1006."

Each element of the "participation" offense denounced by Section 1006 is plainly, concisely and definitely stated (see

10. RIVES, Circuit Judge, briefly in dissent as to the sufficiency of counts thirteen through seventeen:

Supplementing the views stated in footnote 9, the writer would add that the *facts* stated do not support the conclusionary statement "thereby causing the security of said Association to be inferior and not a first lien as required by Statute to the said purchase money mortgage," because it is affirmatively alleged that the purchase money mortgage was not disclosed to the Association, and it is not alleged that the purchase money mortgage was recorded according to law. See Section 695.01, Florida Statutes 1957, F.S.A.

Rule 7(c), Federal Rules of Criminal Procedure), the loan is identified, the amount of participation on the part of the defendants described, and the way in which it was received averred, that is, in the name of Federal Title and Insurance Corporation. The district court erred in dismissing counts eighteen through twenty-one, inclusive.

A majority of the judges of the panel deciding this case hold that the district court erred in dismissing each count of the indictment. The writer concurs except as to counts two through ten and thirteen through seventeen. See Footnotes 9 and 10, supra. As to each count of the indictment, the judgment is reversed and the cause remanded.

Reversed and remanded.