NICHOLAS D. WUSICH AND ELIZABETH S. WUSICH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72843. Filed November 16, 1960.

*James E. Flynn, Esq.,* and *James W. Coombs, C.P.A.,* for the petitioners.

*Edward A. Tonjes, Esq.,* for the respondent.

OPINION.

TURNER, *Judge:* The first question is whether the petitioner is entitled to deduct as ordinary and necessary business expenses[3] amounts paid by him to a bonding company in 1953 and 1954 in satisfaction of his liability to the bonding company.

At the trial and on brief, the petitioner has made the contention that the amounts paid to the bonding company are deductible as ordinary and necessary business expenses. It is the respondent's position that the payments resulted from the petitioner's criminal activity which was outside the scope of his business or employment, and that the allowance of the deductions would frustrate the public policy embodied in sections 656 and 1005 of Title 18 of the United States Code.

To be deductible as an ordinary and necessary business expense, the expense must be both ordinary and necessary. One without the other is not enough. *Lloyd* v. *Commissioner*, 55 F. 2d 842, 844. As the Supreme Court stated in *Deputy* v. *du Pont*, 308 U.S. 488, 497, "Congress has not decreed that all necessary expenses may be deducted. Though plainly necessary they cannot be allowed unless they are also ordinary." There is to our knowledge no "verbal formula that will supply a ready touchstone" for determining whether an expense is ordinary and necessary. *Welch* v. *Helvering*, 290 U.S. 111, 115. And since the decided cases appear to turn on their own particular facts, a review of the great number of such cases would be burdensome rather than helpful.

The words "ordinary and necessary" must be interpreted in their usual and everyday connotation, because "when it comes to construction of the statutory provision under which the deduction is sought, the general rule that 'popular or received import of words furnishes the general rule for the interpretation of public laws' * * * is applicable." *Deputy* v. *du Pont, supra* at 493.

---

[3] Section 162(a) of the Internal Revenue Code of 1954 and its predecessor, section 23(a)(1) of the Internal Revenue Code of 1939, provide for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

The answer to the question whether petitioner's payments to the bonding company were ordinary must be found in the facts leading up to the payments and supplying the basis therefor. "One of the extremely relevant circumstances [in determining whether an expense is ordinary] is the nature and scope of the particular business out of which the expense in question accrued. The fact that an obligation to pay has arisen is not sufficient. It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling." *Deputy* v. *du Pont, supra.

The petitioner's liability had its origin in his dealings with Walkington wherein the petitioner made out deposit slips indicating deposits which had not in fact been made, honored checks on an account lacking funds to pay them, and falsified bank records to conceal the shortage. As a result of these acts, the petitioner was indicted, and pleaded guilty to three counts alleging violation of sections 656 and 1005 of Title 18 of the United States Code. Two of the counts charged that the petitioner "with the intent then and there to injure and defraud said national bank, did unlawfully and wilfully misapply the moneys of said bank." It is well settled that the words "willfully misapplies" used in section 656 do not mean a mere act of maladministration such as neglect of official duty or indifference to the interests of the bank, an act which might subject the wrongdoer to personal liability for damages suffered by the bank or its shareholders. *United States* v. *Britton*, 108 U.S. 199, 206. Instead, there must be a willful misapplication with intent to injure and defraud the bank. *Evans* v. *United States*, 153 U.S. 584; *United States* v. *Meyer*, 266 F. 2d 747; *Seals* v. *United States*, 221 F. 2d 243; *United States* v. *Matsinger*, 191 F. 2d 1014; *Johnson* v. *United States*, 95 F. 2d 813; and *Dow* v. *United States*, 82 F. 904. There being no evidence to the contrary, and petitioner having pleaded guilty to counts in the indictment charging him with an intent to injure and defraud the bank, we have found as a fact that such was the case.

It does not seem to us ordinary for a bank manager to defraud his employer by crediting a depositor's account with fictitious deposits and by honoring overdrafts. These practices evidently were not approved of by the petitioner's employer and were not within the scope of his authority, otherwise there could not have been the conviction for violating section 656. See *United States* v. *Klock*, 210 F. 2d 217. Since the respondent's determination is entitled to a presumption of correctness, the petitioner has the burden of proving that his actions were ordinary in the light of banking practice generally. This he has failed to do. Consequently, we hold that his payments to the bonding company are not deductible under section 162(a) of the 1954 Code or its predecessor in the 1939 Code, section 23(a)(1), regardless of

whether or not they may have been "necessary" within the meaning of those sections.

The petitioner relies heavily upon *Commissioner* v. *Heininger*, 320 U.S. 467, to demonstrate that the payments are deductible as ordinary and necessary business expenses. In that case, a dentist who operated a mail-order business was allowed to deduct his legal expense in unsuccessfully resisting the issuance of a civil fraud order by the Postmaster General barring him from using the mails. Unlike the petitioner here, the taxpayer in the *Heininger* case was seeking to defend his business against a court order which would have in effect destroyed it. The importance of this factor was recognized by the Supreme Court in the following discussion:

The government does not deny that the litigation expenses would have been ordinary and necessary had the proceeding failed to convince the Postmaster General that respondent's representations were fraudulent. Its argument is that dentists in the mail order business do not ordinarily and necessarily attempt to sell false teeth by fraudulent representations as to their quality; that respondent was found by the Postmaster General to have attempted to sell his products in this manner; and that therefore the litigation expenses, which he would not have incurred but for this attempt, cannot themselves be deemed ordinary and necessary. We think that this reasoning, though plausible, is unsound in that it fails to take into account the circumstances under which respondent incurred the litigation expenses. * * * Upon being served with notice of the proposed fraud order respondent was confronted with a new business problem which involved far more than the right to continue using his old advertisements. He was placed in a position in which not only his selling methods but also the continued existence of his lawful business were threatened with complete destruction. *So far as appears from the record respondent did not believe, nor under our system of jurisprudence was he bound to believe, that a fraud order destroying his business was justified by the facts or the law.* Therefore he did not voluntarily abandon the business but defended it by all available legal means. * * * [Emphasis supplied.]

Here, the petitioner was not, insofar as the record indicates, trying to retain his employment with the bank, and he makes no claim that he was, whereas the taxpayer in the *Heininger* case was attempting to prevent the destruction of his business.

Furthermore, the *Heininger* case is distinguishable upon another ground. The opinion of the Supreme Court specifically points out that the dentist was not convicted of a criminal violation, but was merely enjoined from using the mails. As the Court stated:

The single policy of these sections [under which the injunction was issued] is to protect the public from fraudulent practices committed through the use of the mails. It is not their policy to impose personal punishment on violators; such punishment is provided by separate statute, and can be imposed only in a judicial proceeding in which the accused has the benefit of constitutional and statutory safeguards appropriate to trial for a crime. * * *

On the other hand, the petitioner in the instant case was indicted and

convicted of violating two criminal statutes, section 656 and section 1005 of Title 18 of the United States Code. Because of this distinction and the one referred to above, we do not believe the *Heininger* case is applicable here.

The petitioner also cites *Helvering* v. *Hampton*, 79 F. 2d 358; *William Ziegler, Jr.*, 5 T.C. 150; *John Abbott*, 38 B.T.A. 1290; and *H. M. Howard*, 22 B.T.A. 375, in support of the proposition that amounts paid as civil damages to a private individual are deductible. In each of those cases, the transaction out of which the civil liability arose was held to be an ordinary and necessary activity of the particular trade or business involved, there being no violation of a criminal statute. But we have found as a fact that the petitioner's dealings with Walkington were carried out with a criminal intent to injure and defraud the bank and thus were not ordinary and necessary to his employment.

Nor are the payments deductible under section 165 (a) and (c) (1) of the Internal Revenue Code of 1954 and section 23 (e) (1) of the Internal Revenue Code of 1939, which provide for the deduction of losses "incurred in a trade or business." Even if the payments should be said to fall within the literal requirements of the statute, allowance of the deduction would, in our opinion, frustrate public policy under the existing facts. In *Luther M. Richey, Jr.*, 33 T.C. 272, the taxpayer invested $15,000 in a scheme to duplicate United States $100 bills and was swindled out of his investment by his cohorts. He was denied a loss because of the sharply defined public policy against counterfeiting obligations of the United States. Likewise, there is an equally clear policy contained in sections 656 and 1005 designed to prevent willful misapplication of bank funds and falsification of bank records, and to punish such acts when and if they occur. The record establishes that the petitioner's conduct constituted a violation of these sections and that he was an active participant in the wrongdoing. Thus, on the basis of the *Richey* case, it is plain that the payments are not deductible as business losses.

In an alternative contention, the petitioner argues that the amounts paid to the bonding company as interest are deductible under section 163 of the 1954 Code and its predecessor in the 1939 Code, section 23 (b), which provide for the deduction of "all interest paid or accrued within the taxable year on indebtedness." It is conceded by the respondent that deductions should be allowed under those sections, unless there would be a frustration of public policy. Citing *Tank Truck Rentals, Inc.* v. *Commissioner*, 356 U.S. 30, the respondent argues that "the interest, in effect, represents a penalty imposed on petitioner for causing the loss and deprivation of the use of the money" which was misapplied. The fallacy in the argument seems apparent to us. The

portion of each payment representing interest constitutes compensation to the bonding company for the use of its money, and is not of the nature of a penalty. We think it evident that a penalty such as that dealt with in *Tank Truck Rentals, Inc.*, is a type of punishment inflicted by the Government upon a lawbreaker. See *Jerry Rossman Corporation* v. *Commissioner*, 175 F. 2d 711. There is nothing punitive, in our opinion, in the requirement that the petitioner pay interest on his obligation to the bonding company, and the *Tank Truck Rentals* case lends no support to the respondent's position, since that case involved fines paid to the State of Pennsylvania, which were clearly penalties. Thus, we hold that the portions of the payments made by petitioner to the bonding company designated as interest are deductible.

An issue relating to the deductibility of claimed medical expenses was raised in the pleadings. It was neither pressed at the time of trial nor covered by petitioners on brief, and will be regarded as abandoned.

*Decision will be entered under Rule 50.*