CASY O'BRIEN AND DOROTHA O'BRIEN, ALSO KNOWN AS DOROTHEA O'BRIEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 77290, 86023. Filed August 31, 1961.

*Albert J. Ruffo, Esq.*, for the petitioners.
*Joseph D. Holmes, Jr., Esq.*, and *Edward H. Boyle, Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined deficiencies in petitioners' income taxes, as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 77290 | 1955 | $975.29 |
|  | 1956 | 1,083.62 |
| 86023 | 1957 | 1,149.26 |

The cases were consolidated for trial.

The ultimate issue presented for decision in the instant case is whether petitioners are entitled to net operating loss carryover de-

ductions which they claimed on their Federal income tax returns for the above-mentioned years and which were disallowed by the respondent. Decision of the foregoing issue will turn upon a subsidiary issue relating to the propriety of a deduction claimed by petitioners in their 1952 return for the amount of a court judgment in favor of certain insurance companies, which was entered against petitioner Casy O'Brien in that year. This subsidiary issue, in turn, raises three questions:

(1) Was any of the amount of the 1952 judgment deductible, either as a business expense or as a loss, for Federal income tax purposes?

(2) If any of such item was deductible, then what amount should have been deducted?

(3) Was any of such deduction, if allowable, attributable to a business regularly carried on by petitioner Casy O'Brien, so as to be a proper component in the computation of a net operating loss to be carried forward for deduction in subsequent years?

All other issues raised by the pleadings have either been eliminated by stipulation of the parties, or have been conceded by the petitioners in their briefs.

### FINDINGS OF FACT.

Some of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference.

The petitioners, Casy and Dorotha (also known as Dorothea) O'Brien, are husband and wife residing in San Jose, California. They filed a joint Federal income tax return for each of the taxable calendar years here involved, 1955, 1956, and 1957, with the district director of internal revenue at San Francisco, California. The term "petitioner" will have reference to Casy O'Brien.

During the years 1948 through 1952, petitioner operated, as a sole proprietor, a business known as Casy's Feed and Seed Store, in Redding, California.

On July 17, 1949, a fire occurred at Casy's Feed and Seed Store which destroyed the inventory and stock in trade. Thereafter, on or about August 3, 1949, petitioner filed claims with four insurance companies, claiming an inventory fire loss in the total amount of $33,451.67. In support of part of these claims, there were prepared and presented to said insurance companies the following false and fraudulent scale tags or weight certificates purporting to show purchases by petitioner of barley, wheat, and oats:

| Tag or certificate No. | Commodity | Amount of claimed purchase | Tag or certificate No. | Commodity | Amount of claimed purchase |
|---|---|---|---|---|---|
| 8091 | Wheat | $1,579.03 | 8187 | Wheat | $378.00 |
| 8183 | Barley | 908.56 | 8188 | Oats | 432.00 |
| 8184 | Barley | 913.48 | | | |
| 8185 | Wheat | 527.80 | Total | | 5,598.44 |
| 8186 | Barley | 859.57 | | | |

Thereafter, petitioner recovered the following amounts from insurance companies, pursuant to his above-mentioned claims for inventory fire losses:

| Name of insurance company | Amount paid to petitioner | Year when received |
|---|---|---|
| Glens Falls Insurance Co | $13,380.67 | 1949 |
| Fire Association of Philadelphia | 8,362.92 | 1949 |
| Scottish Union & National Insurance Co | 8,362.92 | 1949 |
| Caledonian Insurance Co | 3,345.16 | 1950 |
| Total | 33,451.67 | |

Of the foregoing total amount of $33,451.67 received by petitioner from the insurance companies, $30,106.51 was received by petitioner in 1949, and $3,345.16 was received in 1950.

Petitioner recorded the amount thus recovered in 1949 on his books of account by the following entry:

| | Debit | Credit |
|---|---|---|
| Cash | $30,106.51 | |
| Purchases | | $30,106.51 |

On the Federal income tax return filed by the petitioners for 1949, the amount shown therein as "purchases" in the computation of cost of goods sold, was a "net" figure, i.e., it represented purchases per books, after reduction by said $30,106.51 loss recovery.

The loss recovery of $3,345.16 received by petitioner in 1950 was reflected in petitioner's books of account and on his Federal income tax return for 1950 in the same manner as above described for the recoveries received in 1949.

Approximately 2 years after petitioner had filed the above-described false and fraudulent claims of loss with the insurance companies, he was charged in a California criminal proceeding with violation of section 556 of the Insurance Code of the State of California,[1]

---

[1] Sec. 556. *False or fraudulent claim; penalty.* It is unlawful to:

(a) Present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance.

(b) Prepare, make, or subscribe any writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim.

Every person who violates any provision of this section is punishable by imprisonment in the State prison not exceeding three years, or by fine not exceeding one thousand dollars, or by both. [Cal. Stats. 1935, ch. 145, p. 511, sec. 556.]

relating to presentation of false and fraudulent claims of loss. On June 11, 1951, petitioner pleaded guilty to 11 violations of said section; and he was convicted and sentenced to prison therefor.

Thereafter, on July 5, 1951, the above-named insurance companies filed a civil action against petitioner in the Superior Court of the State of California in and for the County of Shasta, in which the plaintiff-insurance companies prayed for recovery of the $33,451.67 paid by them to the defendant (petitioner herein) representing claimed inventory losses growing out of the July 17, 1949, fire at Casy's Feed and Seed Store. The insurance companies' cause of action was based upon the following terms contained in each of the policies of insurance—

This entire policy shall be void, (a) if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof; or (b) in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

It was alleged that the foregoing provision was applicable by reason of defendant's presentation to the plaintiff-insurance companies of the above-described false and fraudulent scale tags or weight certificates in support of the proofs of loss.

Subsequently on January 16, 1952, the Superior Court granted plaintiffs' motion for summary judgment, stating in part:

The policies were voided by the action of the defendant for which he was adjudged guilty criminally on his own plea and said policies being voided and wiped out, the defendant's insurance companies were not obligated to pay one cent on any of them, and having made such payments before discovering the fraud to which they had been subjected, they are now entitled under their complaint in this action to recover the full amount thereof, if possible.

On January 28, 1952, judgment was entered in favor of the insurance companies in the total amount prayed for ($33,451.67), plus costs of $18 and interest at 7 percent running from dates of their payments to defendant.

Approximately 1 year later, on January 30, 1953, petitioner entered into an agreement with the insurance companies, to compromise the above-mentioned judgment of January 28, 1952. The agreement to compromise called for an immediate payment by petitioner of $4,500, and quarterly payments thereafter of $250 each, beginning on February 1, 1953, and continuing until the sum of $3,000 should have been so paid in quarterly installments. Alternatively, instead of the total amount of $7,500 thus specified, the plaintiffs agreed to accept a total of $6,750, provided the same was paid on or before February 1, 1954. The insurance companies further agreed to deliver to petitioner a satisfaction of said judgment and a release and discharge from further liability thereunder, upon his compliance with either mode of pay-

ment specified in the agreement. The final paragraph of the agreement to compromise provided:

6. That if the payments are not made in the manner and at the times herein set forth, the said Agreement may be terminated by said insurance companies, and all payments theretofore received shall be credited toward said Judgment and said insurance companies may proceed forthwith to collect the balance thereof.

Petitioner made the initial payment of $4,500 required by the agreement to compromise; but he did not make any of the quarterly payments specified therein. However, he did, in 1956, pay $500 on the judgment to the insurance companies, in consideration for their release of the judgment lien from certain property which petitioner and his wife desired to sell to third parties. In May 1957, the statute of limitations was about to run out on the judgment; and the insurance companies thereupon "renewed their judgment." Subsequently, in 1958, the insurance companies entered a satisfaction of the judgment, upon payment to them on petitioner's behalf of $3,000.

Petitioner, on the Federal income tax return for the year 1952 which he filed jointly with his wife, included in the amount deducted as "other business expenses" on line 21 of Schedule C, the amount of $38,141.51,[2] which was described as "Judgment in Superior Court— Shasta County." In the succeeding years 1952 through 1957, petitioner and his wife filed joint Federal income tax returns in which they claimed net operating loss carryover deductions, resulting in major part from the above-mentioned deduction claimed on the 1952 return in respect of the judgment recovered against petitioner by the insurance companies.

The respondent, in his statutory notice of deficiency for the year 1955 (the first taxable year here involved) determined that the judgment claimed as a deduction on the 1952 return in the amount of $38,141.51 was allowable only to the extent of $8,000. Respondent explained his action as follows:

(1) The loss claimed in the taxable year 1952 in the amount of $38,141.51 from a judgment assessed by insurance companies on January 28, 1952, has been determined to be $8,000.00. It is held that the fair market value of the judgment be a total of the cash payments of $4,500.00, periodic payments aggregating $3,000.00 and an additional $500.00 paid in cash. Income has therefore been increased by $30,141.51.

As a consequence of the foregoing adjustment (and other adjustments which are no longer in issue), the respondent determined that no portion of the 1952 net operating loss remained unabsorbed at the beginning of the taxable year here involved; and he accordingly dis-

---

[2] The amount of $38,141.51 was apparently composed of (1) the $33,451.67 which the insurance companies had paid to petitioner; (2) interest of $4,681.84; and (3) court costs of $18.

allowed the net operating loss carryover deductions claimed by petitioner and his wife on their returns for 1955, 1956, and 1957.

OPINION.

The first question is whether any portion of the amount of the judgment (plus interest and costs) which was entered in favor of the insurance companies against petitioner, was deductible, either as a loss or as a business expense,[3] in petitioners' return for 1952, the year when said judgment was entered.

Respondent (departing from the position taken in the notice of deficiency that loss on the judgment was deductible in 1952 to the extent of $8,000) now argues that no such loss was deductible in that year. He relies upon two grounds to support this argument. The first ground is that the judgment constituted a potential loss of the cash received from the insurance companies for destroyed inventory; that, as such, it would be a loss of an income item as distinguished from a capital item; and that, inasmuch as petitioner did not take such receipts into income when received (so respondent asserts), he can not deduct any loss from the disgorgement of said receipts—the petitioner having no basis. Respondent cites *Mary O'Hara Alsop*, 34 T.C. 606, affd. 290 F. 2d 726, (C.A. 2). The respondent's legal proposition is sound; but his factual premise is faulty. Respondent has conceded that one of the ways in which these receipts could have been recognized by petitioner for tax purposes, was for him to have reduced his "purchases" by the amount thereof. We have found as a fact that petitioner did precisely that. Hence, we reject this ground urged by respondent.

The second ground urged by respondent for not allowing any such 1952 deduction is, that to permit the deduction would be to frustrate the sharply defined policy of the State of California against the making of false representations in presenting claims for losses. We think that this ground is sound, and that no portion of the $33,451.67 judgment which the petitioner was ordered to repay to the insurance companies, or of the $18 court costs, was properly deductible by him. A different result obtains as to the interest on the amounts and we will allude to this interest element herein below.[4]

It should be observed, at the outset, that the "loss" with respect to which the carryover deductions here involved are claimed, is not a loss with respect to the destruction by fire of petitioner's inventory and stock in trade in 1949. That loss was uncontested and promptly

<hr>

[3] The petitioner in the instant case cast the deduction on the income tax return in the "expense" category; but in his brief he speaks of a "judgment loss." We regard the difference in categorization of the deduction to be immaterial for the purposes of this case.

[4] References here and elsewhere in this Opinion on the first question as to the propriety of deduction by petitioner of the interest portion of the judgment, *assume* that all other requirements for deduction have been met. We do not find it necessary to *decide* (for reasons hereinafter given) whether such requirements have in fact been met.

adjusted. Rather, the "loss" here involved resulted solely from petitioner's fraudulent actions in making false claims to the insurance companies, for which he was called to account through the judgment obtained by said insurers in 1952, which is the sole year with respect to which any carryover deductions are here claimed by the petitioner. It follows that if such carryover deductions are to be given recognition, they must rest on the allowability of a deduction for the year 1952, in which the judgment was obtained against petitioner on account of his fraud. We think no such deduction for the year 1952 (other than a possible deduction for *interest* paid on such judgment, which we shall hereinafter consider) is allowable.

Two recent cases decided by this Court give effective support to this ground of the respondent's argument. In *Luther M. Richey, Jr.*, 33 T. C. 272, we held that the taxpayer therein, who had invested $15,000 in a scheme to duplicate United States currency and who was swindled out of his investment by his confederates in the scheme, could not deduct said amount as a loss. We based our holding on the ground that allowance of the loss deduction would tend to frustrate the sharply defined policy of the United States Government against counterfeiting, as embodied in 18 U.S.C., sec. 471. In the second such recent case, *Nicholas D. Wusich*, 35 T. C. 279, we held that the taxpayer therein, who had pleaded guilty to violations of the Federal statutes covering misapplication of bank funds and the making of false entries on bank records by bank employees (18 U.S.C., secs. 656 and 1005), could not deduct (either as a business expense or as a loss) amounts which he had paid to a bonding company in reimbursement for his defalcations which the bonding company had been compelled to make good. We concluded that deduction of such amounts was not an "ordinary" expense of the taxpayer, and hence not deductible as a business expense; and that, considering the amounts paid to the bonding company as a loss, they were not deductible, on the ground that to allow deduction would frustrate the public policy evidenced by the above-mentioned statutes.

Bearing the foregoing principles in mind, we turn to the facts of the instant case. We have found as facts, that California had a penal statute (sec. 556 of the Insurance Code of California, see footnote 1, *ante*) forbidding the presentation of "any false or fraudulent claim for the payment of a loss"; that petitioner presented false and fraudulent claims to his insurers for losses totaling $5,598.44, and legitimate claims for $27,853.23—total claims of $33,451.67; that petitioner was paid $33,451.67 by the insurers in discharge of his claims; that petitioner thereafter was charged with violation of the above statute; and that upon his plea of guilty, he was convicted and imprisoned for 11 violations of said statute. The insurance companies which were the victims of petitioner's fraud, thereupon brought a

civil suit against him to recover the amounts which they had paid petitioner; and they received a judgment for said amounts, plus costs and interest, (which judgment was subsequently satisfied in full upon payment of the aggregate amount of $8,000). It is the deductibility in 1952 of all or part of the amount of this judgment which is here at issue. It is plain to us that, under the principles of the *Richey* and *Wusich* cases, that no part either of the said $33,451.67 judgment or of the court costs of $18 in respect thereof, was deductible in 1952. The allowance of such a deduction would frustrate the sharply defined public policy of California against making false claims of loss, by removing some of the "sting" from the consequence of petitioner's wrongdoing. The fact that petitioner was convicted and served a term in prison for his acts of fraud does not change the result. See *Wusich*, wherein the taxpayer had been convicted of a criminal violation, and we denied him a deduction for amounts paid to the bonding company as a consequence of his illegal acts.

Petitioner places reliance upon the case of *Helvering* v. *Hampton*, 79 F. 2d 358 (C.A. 9), wherein the Ninth Circuit held that amounts paid by the taxpayer-real estate dealer pursuant to a judgment in a civil action for fraud, were deductible. The taxpayer in *Wusich* also relied upon the *Hampton* case; but we there distinguished the *Hampton* case and pointed out that—

the transaction out of which the civil liability arose was held to be an ordinary and necessary activity of the particular trade or business involved, *there being no violation of a criminal statute.* [35 T.C. at 287; emphasis supplied.]

Here, of course, there was a criminal statute involved, which petitioner violated; and thus the *Hampton* case is distinguishable from the instant case.

For the foregoing reasons, we hold that no part either of the $33,451.67 judgment which the insurance companies obtained against petitioner or of the $18 court costs in connection therewith, was properly deductible in 1952, either as a loss or as a business expense. Therefore, the so-called subsidiary issue mentioned in our preliminary statement (relating to the propriety of the 1952 claimed deduction) is decided for the respondent; and this in turn compels a decision in respondent's favor on the ultimate issue, to the effect that the net operating loss carryover deductions claimed by petitioner are not allowable. So deciding this first question, it becomes unnecessary for us to reach or pass upon the other two questions mentioned in our preliminary statement.

One further matter remains to be commented upon. The total amount deducted by petitioner on his 1952 return was $38,141.51. As we stated in footnote 2, *supra*, this amount was "apparently" composed of the principal sum of $33,451.67, court costs of $18, and interest of $4,681.84. In the *Wusich* case, we held that *interest* on the prin-

cipal sum paid by the taxpayer to the bonding company was deductible. 35 T.C. 279, 287–288. In this holding the Commissioner has acquiesced. 1961–1 C.B. 4. On the authority of the *Wusich* case, the interest element of petitioner's liability to the insurers would normally qualify for deduction. However, as we have found as a fact, the respondent in computing the amount of the deficiencies here involved allowed the petitioner a 1952 deduction for his claimed judgment loss in the amount of $8,000, which is in excess of the interest element of $4,681.84; and notwithstanding that respondent later changed his position, he has not sought to withdraw the benefit of such allowance. Thus, petitioner has already received a greater benefit than that to which he is entitled.

*Decision will be entered under Rule 50.*