## UNITED STATES *v.* HOOD ET AL.

No. 426.   Argued March 4, 1952.—Decided March 31, 1952.

*Philip Elman* argued the cause for the United States. *Solicitor General Perlman, Assistant Attorney General*

*McInerney* and *Beatrice Rosenberg* filed a brief for the United States.

*Ben F. Cameron* argued the cause for appellees. With him on a brief were *W. S. Henley, Robert W. Thompson, Jr.* and *Albert Sidney Johnston* for Brashier et al., appellees.

Opinion of the Court by MR. JUSTICE FRANKFURTER, announced by THE CHIEF JUSTICE.

The defendants were charged in the District Court for the Southern District of Mississippi with a conspiracy to violate 18 U. S. C. (Supp. IV) § 215 and numerous substantive violations of the same section. The law provides:

> "Whoever solicits or receives, either as a political contribution, or for personal emolument, any money or thing of value, in consideration of the promise of support or use of influence in obtaining for any person any appointive office or place under the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both." [1]

The indictment charged a conspiracy to solicit contributions to the Mississippi Democratic Committee and to the defendants personally in return for promises to use influence to obtain for the contributors appointments in the Post Office Department and in the Office of Price Stabilization. Other counts of the indictment charged substantive violations. Material here are counts 31, 32, and 33 charging the solicitation by two of the defendants of three $300 political contributions from named individuals in return for the promise of support and influence on behalf of the contributors to secure for them appointments as Chairmen of the County Ration Boards of Pike, Amite

---

[1] The statute was revised and amended in 1951 in respects not material here. 65 Stat. 320.

and Lawrence Counties, respectively. It is stipulated that no such offices were in existence at the time of the solicitation or at any time thereafter up to the return of the indictment. Authority to create such offices, however, had been granted to the President, well before the violations charged, by the Defense Production Act of 1950, 64 Stat. 798, 807, 50 U. S. C. App. (Supp. IV) § 2103.

Defendants successfully moved to dismiss these portions of the indictment on the ground that the statute did not make criminal the sale of non-existent offices or of influence in connection with appointments to them. The District Court also ordered stricken the references in the conspiracy count to the offices of Chairmen of County Ration Boards. The order of dismissal was appealed by the Government under the Criminal Appeals Act, 18 U. S. C. (Supp. IV) § 3731. Our jurisdiction in such cases is limited to the construction of the statute involved.

We think the District Court was wrong. The statute is plainly broad enough on its face to cover the sale of influence in connection with an office which had been authorized by law and which, at the time of the sale, might reasonably be expected to be established. That was the situation here and we do not have to go further to say whether the words will cover the sale of an office which is purely the creature of the seller's fancy.

The evil at which the statute is directed is the operation of purchased, and thus improper, influence in determining the occupants of federal office. But in attacking that evil, Congress outlawed not the use of such influence, but the solicitation of its purchase, the peddling of the forbidden wares. As is not uncommon in criminal legislation, Congress, in order to strike at the root, made the scope of the statute wider than the immediate evil. Even judges need not be blind to the fact of political life that it helps in influencing political appointments to be fore-

handed with a recommendation before an office is formally created. Certainly it was not unreal for Congress to believe that the sale of influence in anticipation of jobs was equally damaging to the proper operation of the federal service and to take steps to prevent it. It did so in this Act. Nothing has been suggested, either by the sparse legislative history or by prior judicial construction,[2] to restrain us from giving effect to the obvious, ordinary reading of the statute. It is pressed upon us that criminal statutes are to be strictly construed. But this does not mean that such legislation "must be construed by some artificial and conventional rule." *United States* v. *Union Supply Co.*, 215 U. S. 50, 55. We should not read such laws so as to put in what is not readily found there. But equally we should not read out what as a matter of ordinary English speech is in.

This Act penalized corruption. It is no less corrupt to sell an office one may never be able to deliver than to sell one he can. Dealing in futures also discredits the processes of government. There is no indication that this statute punishes delivery of the fruit of the forbidden transaction—it forbids the sale. The sale is what is here alleged. Whether the corrupt transaction would or could ever be performed is immaterial. We find no basis for allowing a breach of warranty to be a defense to corruption.

Our construction of the statute does not offend the requirement of definiteness. The picture of the unsuspecting influence merchant, steering a careful course between violation of the statute on the one hand and obtaining money by false pretenses on the other by confining himself to the sale of non-existent but plausible offices, entrapped

---

[2] Only one reported case has construed the statute. *Hoeppel* v. *United States*, 66 App. D. C. 71, 85 F. 2d 237. It dealt with a question unrelated to this case.

by the dubieties of this statute, is not one to commend itself to reason.

The judgment below is reversed and the case remanded for further proceedings.

*Reversed.*

MR. JUSTICE BLACK, with whom MR. JUSTICE REED, MR. JUSTICE DOUGLAS and MR. JUSTICE MINTON concur, dissenting.

18 U. S. C. § 215 makes it a crime to solicit or receive political contributions on the basis of a promise to help "any person" obtain "any appointive office or place under the United States . . . ." The Government argues that this statute makes it criminal to promise to help someone get an "office or place" even though there is no such office or place in existence. Apparently sensing that such an extraordinary expansion of this criminal statute might not be accepted, the Government argues for a lesser expansion sufficient to include an "office or place" if there is a "substantial possibility" that it may be "set up in the near future." The Court's construction is apparently the same although there are slight verbal variations. It reads the statute as punishing promises made to use "influence in connection with an office which had been authorized by law and which, at the time of the sale, might reasonably be expected to be established." The words used in this statute convey no such meaning to me. I think that any person reading the words "office or place" would immediately think of them as applying to an actual, existing "office or place." This surely would be a fair construction of the language used, and I think it is the construction that should be compelled in connection with this criminal statute. It requires considerable straining to say that Congress "plainly and unmistakably," *United States* v. *Gradwell*, 243 U. S. 476, 485, made it a crime to use influence in connection with an "office or place" that did

not exist.   See *United States* v. *Halseth,* 342 U. S. 277. As a matter of fact, the "reasonably to be expected" office or place here talked about was not only nonexistent at the time the alleged promise was made—it has not been "set up" yet.   We should not stretch this statute to cover conduct which is not prohibited on the theory that Congress would have done so had it thought about it.   *United States* v. *Weitzel,* 246 U. S. 533, 543; *McBoyle* v. *United States,* 283 U. S. 25, 27; *Pierce* v. *United States,* 314 U. S. 306.