**UNITED STATES of America**

v.

**George Donald SHIREY.**

**Cr. No. 12527.**

United States District Court
M. D. Pennsylvania.
March 17, 1958.

J. Julius Levy, U. S. Atty., Scranton, Pa., for plaintiff.

Cohen & Senft, York, Pa., for defendant.

FOLLMER, District Judge.

This is a motion to dismiss the Information because the Information does not state facts sufficient to constitute an offense against the United States of America.

The Information charges that:

"On or about the 5th day of December 1953, in the City of York, Middle District of Pennsylvania, and within the jurisdiction of this Court, George Donald Shirey, in violation of the Act of Congress, June 25, 1948, c. 645, Sec. 1, 62 Stat. 694, 18 U.S.C. Sec. 214, did *knowingly, wilfully* and *unlawfully* offer or promise to S. Walter Stauffer, a Member of Congress of the 19th Congressional District of Pennsylvania, to donate $1,000 a year to the Republican Party to be used as they see fit, in consideration of the use or the promise to use any influence to procure for him the appointive office, under the United States, of Postmaster of York, Pennsylvania."

As above indicated, this Information was brought under 18 U.S.C. § 214 which reads as follows:

"Offer to procure appointive public office

"Whoever pays or offers or promises any money or thing of value, to any person, firm, or corporation in consideration of the use or promise to use any influence to procure any appointive office or place under the United States for any person, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

The counterpart to this statute appears in the next section of the Code (18 U.S.C. § 215) and reads as follows:

"Acceptance or solicitation to obtain appointive public office.

"Whoever solicits or receives, either as a political contribution, or for personal emolument, any money or thing of value, in consideration of the promise of support or use of influence in obtaining for any person any appointive office or place under the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

No case construing Section 214 has been brought to our attention, nor has our independent search disclosed any.

In United States v. Hood, 1952, 343 U.S. 148, 72 S.Ct. 568, 569, 96 L.Ed. 846, appellees were indicted for violating 18 U.S.C. § 215, which, as above indicated, makes it a misdemeanor for anyone to solicit or receive contributions in consideration of the promise of support or use of influence in obtaining for any person "any appointive office or place under the United States." The trial court dismissed certain counts of the indictment which alleged the solicitation of contributions in return for promises to use influence to obtain offices which were not in existence at the time of the solicitation or the return of the indictment but which the President had been authorized to create under the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2061 et seq. The order of dismissal was appealed by the Government direct to the Supreme Court under the Criminal Appeals Act, 18 U.S.C. (Supp. IV) § 3731. The Supreme Court in reversing stated, inter alia:

"We think the District Court was wrong. The statute is plainly broad enough on its face to cover the sale of influence in connection with an office which had been authorized by law and which, at the time of the sale, might reasonably be expected to be established. That was the situation here and we do not have to go further to say whether the words will cover the sale of an office which is purely the creature of the seller's fancy.

"The evil at which the statute is directed is the operation of purchased, and thus improper, influence in determining the occupants of federal office. But in attacking that evil, Congress outlawed not the use of such influence, but the solicitation of its purchase, the peddling of the forbidden wares. As is not uncommon in criminal legislation, Congress, in order to strike at the root, made the scope of the statute wider than the immediate evil. Even judges need not be blind to the fact of political life that it helps in influencing political appointments to be forehanded with a recommendation before an office is formally created. Certainly it was not unreal for Congress to believe that the sale of influence in anticipation of jobs was equally damaging to the proper operation of the federal service and to take steps to prevent it. It did so in this Act. Nothing has been suggested, either by the sparse legislative history or by prior judicial construction, to restrain us from giving effect to the obvious, ordinary reading of the statute. It is pressed upon us that criminal statutes are to be strictly construed. But this does not mean that such legislation 'must be construed by some artificial and conventional rule.' United States v. Union Supply Co., 215 U.S. 50, 55, 30 S.Ct. 15, 54 L.Ed. 87. We should not read such laws so as to put in what is not readily found there. But equally we should not read out what as a matter of ordinary English speech is in.

"This Act penalized corruption. It is no less corrupt to sell an office one may never be able to deliver than to sell one he can. Dealing in futures also discredits the processes of government. There is no indication that this statute punishes deliv-

ery of the fruit of the forbidden transaction—it forbids the sale. The sale is what is here alleged. Whether the corrupt transaction would or could ever be performed is immaterial. We find no basis for allowing a breach of warranty to be a defense to corruption."

In the instant case we are not dealing in a sale, rather an attempted purchase.

 Sections 214 and 215, supra, first appear, substantially in pari materia, as a single act, approved December 11, 1926, 44 Stat. 918, H.R.10739, Public, No. 525, as follows:

"An Act To prevent purchase and sale of public office.

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That it shall be unlawful to pay or offer or promise to pay any sum of money, or any other thing of value, to any person, firm, or corporation in consideration of the use or promise to use any influence, whatsoever, to procure any appointive office under the Government of the United States for any person whatsoever.

"Sec. 2. It shall be unlawful to solicit or receive from anyone whatsoever, either as a political contribution, or for personal emolument, any sum of money or thing of value, whatsoever, in consideration of the promise of support, or use of influence, or for the support or influence of the payee, in behalf of the person paying the money, or any other person, in obtaining any appointive office under the Government of the United States.

"Sec. 3. Anyone convicted of violating this Act shall be punished by imprisonment of not more than one year, or by a fine of not more than $1,000, or by both such fine and imprisonment.

"Sec. 4. All Acts and parts of Acts inconsistent herewith are hereby repealed."

 This is a criminal statute and with the reservations made in United States v. Hood, supra, must be strictly construed. United States v. Five Gambling Devices, 7 Cir., 252 F.2d 210. The construction of a statute should be with reference both to the history of the legislation and to other sections of the law with which it is in pari materia. Gutschalk v. Peck, D.C.N.D.Ohio 1919, 261 F. 212.

 As above indicated, Sections 214 and 215 first appeared in 1926 as a single act. The soliciting section (215) specifically mentions "political contribution." No such characterization is found in Section 214 under which this Information is drawn. The Information here alleges that the defendant offered or promised to donate $1,000 a year to the Republican Party. The section in question specifically limits the payee to "any person, firm or corporation." A political party has been defined as a body of persons associated for the purpose of promoting certain views, opinions, or principles with respect to government. 29 C.J.S. Elections § 84, Political Parties. It is in no sense of the word a person, a firm, or a corporation. Had the Congress so desired, or intended, it could have added to the words "person, firm or corporation" the further words "or political party."

 Having in mind the obvious evil at which both Section 214 and Section 215 are directed, namely, the traffic in federal offices, it is interesting to note that only in § 215 (solicitation) was Congress concerned about a political contribution. The two sections have stood with no substantial change for nearly thirty-two years. It is not, in my judgment, the province of the courts to attempt to rationalize this apparent deliberate omission.

 In the instant case the Information does not charge that the offer was to contribute to the individual named therein, a Congressman; the offer was made to the individual to contribute to the Republican Party. Considering Sec-

tions 214 and 215 as a whole, and having in mind the rules of construction above referred to, particularly in the light of the Hood case, supra, it is my conclusion that the Information does not state facts sufficient to constitute an offense against the United States of America.

Motion to dismiss the Information will be granted.