STATE of Alaska, Appellant,

v.

Fred ADKERSON and Robert L. Deakin,
Appellees.

No. 520.

Supreme Court of Alaska.

June 25, 1965.

James N. Wananmaker, Dist. Atty., Anchorage, and Dorothy Awes Haaland, Asst. Dist. Atty., for appellant.

Wendell P. Kay and Robert M. Libbey, of Kay & Miller, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

The question before us is whether a lewd show is encompassed within the language "other immoral purpose" as used in AS 11.40.330 and AS 11.40.350.

Appellees were charged in two counts of an indictment with the offense of procuring a female "for an immoral purpose * * * to participate in a lewd show" in violation of AS 11.40.350. Two additional counts charged appellees with the offense of transporting a female "for immoral purpose * * * to appear in a lewd * * * show" in violation of AS 11.40.330. After trial by jury appellee Adkerson was found guilty as to all four counts and appellee Deakin was found guilty of the two procuring counts. After the jury's verdict was returned, the trial court granted appellees' motion in arrest of judgment as to all four counts.[1] The State then appealed the trial

---

1. Criminal Rule 34 provides in part:
   *Arrest of Judgment.*
   (a) *Grounds.* A motion in arrest of judgment following a plea or verdict of guilty may be founded on one or more of the following grounds, and not otherwise:
       *     *     *     *     *
   (2) That the facts stated in the indictment or information do not constitute a crime.
   Prior to his entry of pleas to the indictment, appellee Adkerson moved to dis-

miss the indictment on the grounds that it did not charge an offense basing his motion on the contention that a lewd show was not within the prohibitions of AS 11.40.330 and AS 11.40.350. The trial court initially denied Adkerson's motion. After the verdicts were returned, appellee Adkerson renewed his motion to dismiss and appellee Deakin filed a motion in arrest of judgment. The trial court, treating Adkerson's motion as one in arrest of judgment, then granted appellees' re-

court's order arresting judgment.[2] We are of the opinion that the trial court was correct in granting appellees' motions in arrest of judgment.

Initially it should be observed that a motion in arrest of judgment raises only objections which appear on the face of the record. United States v. Lias, 173 F.2d 685, 687 (4th Cir. 1949); United States v. Zisblatt, 172 F.2d 740, 741 (2d Cir. 1949); Sutton v. United States, 157 F.2d 661 (5th Cir. 1946).[3] In this case the motion challenged only the sufficiency of the indictment. It is also pertinent to note that in determining a question as to the sufficiency of an indictment a bill of particulars cannot be looked to. Russell v. United States, 369 U.S. 749, 769–770, 82 S.Ct. 1038, 8 L.Ed.2d 240, 254 (1962); United States v. Seeger, 303 F.2d 478, 484 (2d Cir. 1962); United States v. Johns-Manville Corp., 213 F.Supp. 65, 71 (E.D. Pa.1962).[4]

AS 11.40.330 defines the offense of transporting females for immoral purposes. This section reads in full as follows:

The importation or exportation of a female into or from the state for immoral purposes is prohibited, and a person who (1) induces, entices or procures, or attempts to induce, entice or procure a female to come into or leave the state for the purpose of prostitution or concubinage, or for other immoral purpose, or to enter a house of prostitution in the state; or (2) aids a female in obtaining transportation to or within the state for the purpose of prostitution or concubinage, or for other immoral purpose is guilty of a felony, and upon conviction is punishable by imprisonment in the penitentiary for a period of not less than two years nor more than 20 years or by a fine of not less than $1,000 nor more than $5,000, or by both.

The offense of procuring a female for prostitution is set forth in AS 11.40.350 which provides:

A person who induces, entices or procures, or attempts to induce, entice or procure a female for the purpose of prostitution or concubinage, or for other immoral purpose, or to enter a house of prostitution in the state, is guilty of a felony, and upon conviction is punishable by imprisonment in the penitentiary for a period of not less than two

---

spective motions and arrested judgment as to the four counts.

2. Supreme Court Rule 6 provides:
   *Judgments From Which Appeal May Be Taken.*
   An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, except that the state shall have a right to appeal in criminal cases only to test the sufficiency of the indictment or information.
   See also AS 22.05.010.

3. In the Sutton case, supra, it is stated at 663 of 157 F.2d:
   A motion in arrest of judgment may be maintained only for a defect appearing upon the face of the record, and the evidence is no part of the record. [Footnote omitted.]

4. In the Russell case, supra, the Supreme Court said at 769–770, 82 S.Ct. at 1050, 8 L.Ed.2d at 254:

It is argued that any deficiency in the indictments in these cases could have been cured by bills of particulars. But it is a settled rule that a bill of particulars cannot save an invalid indictment. See United States v. Norris, 281 U.S. 619, 622, 50 S.Ct. 424, 425, 74 L.Ed. 1076 [1077]; United States v. Lattimore, 94 U.S.App.D.C. 268, 215 F.2d 847; Babb v. United States [CA5 Tex.] 218 F.2d 538; Steiner v. United States [CA9 Cal.], 229 F.2d 745; United States v. Dierker [DC Pa.], 164 F.Supp. 304 * * *.

In our case the State filed a bill of particulars which in its relevant portions stated:

That the lewd show * * * specified in counts I, II, III and IV of the indictment included nudity and physical contact between persons of the opposite sex.

years nor more than 20 years, or by a fine of not less than $1,000, or by both.

As indicated previously, the principal question before us is whether a lewd show comes within the prohibitions of these statutes. In light of the legislative history of AS 11.40.330 and 11.40.350 and analysis of the wording of these two statutes we conclude that a lewd show is not within the prohibition of "other immoral purpose." The statutes in question were first enacted into law by the Territorial Legislature in 1915.[5] The purpose of the Act as set forth in its title was:

> To prevent the seduction and prostitution of women and girls, and providing punishment therefor; and to prevent the receipt of money, or other valuable thing, from women engaged in

prostitution and prescribing punishment therefor.

■ A reading of the nine substantive sections of the 1915 Act clearly indicates that the primary purpose of the Act was the prevention of prostitution within the Territory of Alaska.[6] Of further significance is the fact that at the time Chapter 55, SLA 1915, was enacted into law there was an existing statute which prohibited lewd and indecent exhibitions.[7] The 1915 Act did not expressly repeal or amend the statute which prohibited lewd and indecent exhibitions. Therefore, we are of the opinion that to construe "other immoral purpose" as including a lewd show within its ambit would be contrary to the legislature's intent when it enacted the 1915 Act.[8]

---

5. SLA 1915, ch. 55, §§ 1 & 3.

6. The Act prohibited importation of women into the Territory for the purpose of prostitution; placing of females in a house of prostitution; procuring women for the purpose of prostitution; receiving money for the placement of females in a house of prostitution; paying money to procure females for placement in a house of prostitution; detention of females in a house of prostitution to compel payment of debts; and living off the earnings of a prostitute.

Also of interest is the use of the phrase "immoral purposes" in section 5 of the 1915 Act. This section reads in part:

> Any person who shall pay any money or other valuable thing to procure any female for the purpose of placing her for immoral purposes in any house of prostitution or elsewhere * * *.

7. See 30 Stat. 1271 (1899), Carter Code, Chapter 7, § 124 (1900); § 2004, CLA (1913); § 4926, CLA (1933); § 65-9-6, ACLA 1949; now AS 11.40.080. This statute provides:

> A person who wilfully and lewdly exposes his person or the private parts of his person in a public place, or in a place where there are present other persons to be offended or annoyed, or who takes part in a model artist exhibition, or makes other exhibition of himself to public view, or to the view of a number of persons, which is offensive to decency, or which is adapted to excite vicious or lewd thoughts or

acts, upon conviction, is punishable by imprisonment in a jail for not less than thre months nor more than one year, or by a fine of not less than $50 nor more than $500.

8. 2 Sutherland, Statutory Construction § 5201, pp. 529–530 (3d ed. 1943), where the author writes:

> The intent of the legislature when a statute is found to be ambiguous may be gathered from statutes relating to the same subject matter—statutes *in pari materia.* On the presumption that whenever the legislature enacts a provision it has in mind the previous statutes relating to the same subject matter, it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they all should be construed together. [Footnotes omitted.]

Also pertinent are the principles that a criminal statute should not by interpretation be expanded beyond its plain language nor be interpreted so narrowly as to defeat its obvious intent. United States v. Braverman, 373 U.S. 405, 408, 83 S.Ct. 1370, 10 L.Ed.2d 444, 447 (1963); United States v. Hood, 343 U.S. 148, 151, 72 S.Ct. 568, 96 L.Ed. 846, 849 (1952); United States v. Williams, 341 U.S. 70, 82, 71 S.Ct. 581, 95 L.Ed. 758, 767 (1951); Williams v. United States, 341 U.S. 97, 101, 71 S.Ct. 576, 95 L.Ed. 774, 788–789 (1951).

Both the State and appellees urge this court to apply the rule of *ejusdem generis* as a canon of construction.[9] The State contends that the phrase "other immoral purpose" by virtue of its association with the terms "prostitution" and "concubinage" is restricted to unlawful sexual immorality, but is not limited to immorality involving sexual intercourse.[10] Assuming that this case presents a proper instance for the application of the rule of *ejusdem generis*, we still conclude that "other immoral purpose" does not encompass a lewd show as charged in the indictment. In our opinion the particular wording "for the purpose of prostitution or concubinage" limits the general phrase "other immoral purpose" to conduct which involves sexual intercourse.[11]

The superior court's order arresting judgment is affirmed.

9. For a general treatment of *ejusdem generis*, see 2 Sutherland, Statutory Construction §§ 4909–14, pp. 395–412 (3d ed. 1943); Gooch v. United States, 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522, 526 (1936); United States v. Mescall, 215 U.S. 26, 30 S.Ct. 19, 54 L. Ed. 77 (1909).

In the Mescall case, the Court stated 215 U.S. at 31–32, 30 S.Ct. at 20, 54 L.Ed. at 79:

Counsel for defendant invokes what is sometimes known as Lord Tenderden's rule,—that, where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described, —*ejusdem generis*. * * *

'But this is only a rule of construction to aid us in arriving at the real legislative intent. It is not a cast-iron rule, it does not override all other rules of construction. * * * Whilst its is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the genus, there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose.'

10. In support of this contention the State relies principally upon Mann Act precedents. These precedents are distinguishable. The Mann Act, 36 Stat. 825, 18 U.S.C.A. § 398 (1910), as amended, 18 U.S.C.A. § 2421 (1951), makes an offense the transportation in interstate commerce of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose * * *." The term "debauchery" has a much broader connotation than the term "concubinage" as used in the two statutes in question. In Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946), a Mann Act case, Mr. Justice Douglas stated in part that:

Prostitution, to be sure, normally suggests sexual relations for hire. But debauchery has no such implied limitation. In common understanding the indulgence which that term suggests may be motivated solely by lust. And so we start with words which by their natural import embrace more than commercialized sex. Id. at 17–18, 67 S.Ct. at 15, 91 L.Ed. at 16. [Footnotes omitted.]

11. In Collins v. State, 83 Fla. 458, 92 So. 681, 683 (1922), under a statute with the same wording as the two in question in this appeal the Florida court similarly limited the language "other immoral purposes." See also Hansen v. Haff, 291 U.S. 559, 562, 54 S.Ct. 494, 495, 78 L.Ed. 968, 971 (1943), where the phrase "or for any other immoral purpose," as used in section 3 of the Immigration Act of 1917 was limited to that of "like character with prostitution."