410 P.2d 508 (1966)
CHUGACH ELECTRIC ASSOCIATION, Inc., a corporation, Appellant,
v.
CALAIS COMPANY, Inc., a corporation, Appellee.
No. 601.
Supreme Court of Alaska.
February 3, 1966.
William J. Moran, Anchorage, for appellant.
Kenneth R. Atkinson, Atkinson, Wade & Conway, Anchorage, for appellee.
Before NESBETT, C.J., and DIMOND and RABINOWITZ, JJ.
DIMOND, Justice.
The appellee, Calais Company, Inc., was the owner and subdivider of the Bancroft Subdivision which is located near the City of Anchorage. In accordance with a regulation of the Greater Anchorage Platting Board, a plat of the subdivision shows 20 foot utility easements at the rear of the several lots, such easements being designated by broken lines and the descriptive words or abbreviations "Utility Easement", "Utility Ease.", and "Util. Ease."[1] The *509 plat was approved by the Greater Anchorage Platting Board on June 24, 1964 and filed of record in the office of the recorder for the Anchorage Recording District on June 26, 1964.
On June 15, 1964, Calais entered into an oral agreement with the City of Anchorage for the latter to provide underground electrical service in the subdivision. This agreement was reduced to writing on July 15, 1964.
Between July 25 and August 3, 1964 appellant, Chugach Electric Association, Inc., constructed an overhead power line within the utility easements as shown on the subdivision plat. No request to Chugach for electrical service had been made by Calais or by anyone in the subdivision. On July 28, 1964 Calais advised Chugach by letter that underground facilities were to be installed, and by letter dated July 30, 1964, Calais objected to the overhead line and demanded that it be removed. Chugach failed to heed the demand and Calais brought this action to enjoin further overhead construction and to have the existing line removed. The trial court determined that Chugach was a trespasser in constructing the overhead line, and ordered that it be removed and the real estate restored to its prior condition, or in the alternative that appellant pay the reasonable costs of such removal and restoration. The court also permanently enjoined Chugach from erecting, constructing or maintaining any electrical transmission lines, poles and related facilities in the Bancroft Subdivision. Chugach then brought this appeal.
A statute provides that when an area is subdivided and a plat of the subdivision is approved and recorded, "all streets, alleys, thoroughfares, parks and other public area shown on the plat are deemed to have been dedicated to public use."[2] In accordance with a regulation of the platting board,[3] there was printed on the plat and executed by Calais a certificate of ownership and dedication which stated:
We hereby certify that we are the owners of the property shown and described hereon and that we hereby adopt this plan of subdivision with our free consent, and dedicate all streets, alleys, walks, parks and other open spaces to public or private use as noted.
It is the contention of Chugach that the utility easements shown on the plat in accordance with the requirement of the platting board regulation[4] are "other open spaces" within the meaning of the certificate of ownership and dedication, or constitute "other public area" within the meaning of the dedication statute, and were dedicated by Calais for public use by public utilities. Chugach then argues that since it is a public utility company with a certificate of convenience and necessity from the Alaska Public Service Commission to serve an area in which Bancroft Subdivision is included, that it has the right to avail itself of the utility easements so dedicated and to occupy and employ them for electric distribution facilities.
The argument made by Chugach is untenable. A dedication occurs when the owner of an interest in land transfers to the public a privilege of use of such interest for a public purpose.[5] There was no dedication of the utility easements. It is appropriate here to invoke the rule of ejusdem generis  that where particular words are followed by general terms, the latter will be regarded *510 as referring to things of a like class with those particularly described.[6] The words "other public area" as used in AS 40.15.030, and "other open spaces" as used in the certificate of ownership and dedication, being preceded by the terms "streets, alleys, walks, parks and thoroughfares", will be construed as referring to things of the same general class as streets, alleys, walks, parks and thoroughfares  that is, public area and open spaces which by their nature are subject to being used by the public at large, and not merely by a particular segment of the public. The utility easements shown on the Bancroft Subdivision plat do not fit into such class because by their nature they are not subject to general or common use by the public at large, but only by a limited number of persons or corporations who are engaged in the business of providing public utility services for the residents of the Bancroft Subdivision. Such utility easements are public only in the sense that when used by a few, all of the residents of the subdivision, as a part of the public are entitled to derive benefits from such use. But those residents  members of the public  are not using such easements in the manner that they would use the streets, alleys, parks, walks and thoroughfares in the subdivision, but are only deriving benefits from the use of such easements by particular persons or corporations providing utility services.
The utility easements designated on the subdivision plat were not dedicated for public use. Since there was no dedication, Calais had the right as owner of the subdivision under the peculiar facts of this case to designate which of the two competing utility companies would be permitted to utilize the utility areas shown on the plat. The court below was correct in holding that Chugach was a trespasser in going upon the area of the subdivision reserved for utility easements without Calais' permission and constructing an overhead power line on such property.
The judgment is affirmed.
NOTES
[1] Article III, Section F of the subdivision regulations of the Greater Anchorage Platting Board provides in part as follows:

1. Easements: Rights of way or easements at least twenty (20) feet wide, ten (10) feet on each side of the rear or side property lines of lots, together with the right of ingress and egress thereto and therefrom, shall be provided where necessary for public utilities. Likewise, an anchor pole easement ten (10) feet wide, twenty-five (25) feet deep appropriately placed, together with the right of ingress and egress thereto and therefrom shall be provided where necessary for public utilities.
[2] AS 40.15.030.
[3] Greater Anchorage Platting Board Regulation, Art. II, § E(9), provides as follows:

9. Certificate of Ownership and Dedication. The following certificate shall be printed on the Plat and signed by the owner or owners. The Certificate as shown here may be amended if circumstances of ownership warrant. Any signatures appearing on the Certificate shall be notarized by a Notary Public for the Territory of Alaska.
[4] See note 1 supra.
[5] Hamerly v. Denton, 359 P.2d 121, 125 (Alaska 1961).
[6] United States v. Mescall, 215 U.S. 26, 31-32, 30 S.Ct. 19, 20, 54 L.Ed. 77, 79 (1909). The words ejusdem generis, literally translated, mean "of the same kind, class or nature." Black, Law Dictionary at 608 (4th ed. 1961). The rule of ejusdem generis was discussed but not applied in our decision in State v. Adkerson, Opinion No. 294, 403 P.2d 673, 676 (Alaska 1965).