**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

CHRISTOPHER ANDARYL WILLS, a/k/a
Michael Wills, a/k/a Ed Short,
          *Defendant-Appellee.*

No. 00-4257

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-99-396-A)

Argued: September 28, 2000

Decided: December 5, 2000

Before WILKINSON, Chief Judge, and WIDENER and
MOTZ, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Chief Judge Wilkinson and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Vincent L. Gambale, Assistant United States Attorney,
Charles Philip Rosenberg, Assistant United States Attorney, Alexan-
dria, Virginia, for Appellant. Alan Hideto Yamamoto, Alexandria,
Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States
Attorney, Alexandria, Virginia, for Appellant.

**OPINION**

WIDENER, Circuit Judge:

The government appeals the district court's order dismissing Count I of its indictment against Christopher Andaryl Wills (Wills) under the Federal Kidnapping Act, 18 U.S.C. § 1201(a)(1). For the reasons that follow, we reverse the district court's order and remand this case to the district court for further proceedings. In reaching this conclusion, we recognize the conflict we create with the Fifth Circuit's decision in *United States v. McInnis*, 601 F.2d 1319, 1327 (5th Cir. 1979), in which the Fifth Circuit held that the jurisdictional component of § 1201(a)(1) is not met when the victim travels unaccompanied over State lines.[1]

I.

A grand jury sitting in the Eastern District of Virginia returned an indictment charging Wills with one count of kidnapping under 18 U.S.C. § 1201(a)(1) and one count of interstate stalking under 18 U.S.C. § 2261A. The indictment includes several factual allegations pertinent to this appeal. Count I of the indictment charges that:

> [Wills] did knowingly and unlawfully inveigle and decoy and hold Zabiuflah Alam for the purpose of preventing him from testifying as a witness, and did unlawfully transport and cause Alam to be transported in interstate commerce . . . from Virginia . . . to Washington, D.C. . . . resulting in the death of the victim. . . .

The government alleges that Wills burglarized Zabiuflah Alam's home in Virginia. Upon returning home around 2:00 a.m. on April 4, 1998, Alam found Wills inside of his apartment. Wills fled, but was soon arrested and charged by the Fairfax County police with burglary.

---

[1] Notably, however, some of the language in *United States v. Jackson*, is in accord with our decision. "[The statute] . . . does not require that the defendant move the victim or that the defendant knows that the victim will be moved in interstate commerce." 978 F.2d 903, 910-11 (5th Cir. 1992).

Alam subsequently testified during a preliminary hearing in the Fairfax County General District in Virginia on June 15, 1998 and identified Wills as the person who burglarized his home. That court found probable cause to believe Wills committed the burglary and referred the case to the state grand jury. The grand jury was scheduled to meet on July 20, 1998 and Wills, if indicted, would have been arraigned on July 21, 1998. Wills was then released on bond.

On or around June 17, 1998, the government alleges that Wills left a flyer at Alam's Virginia residence advertising a job opportunity. The flyer gave information for a job at an apartment complex that would pay $11.00 per hour and provide full benefits. A Washington, D.C. telephone number was listed as the contact number. That contact number was a cell phone number acquired by Wills and activated by Wills on or about June 17, 1998 at a Radio Shack in Washington, D.C. Wills prepaid for service in cash, used the fictitious name "Ed Short," and listed Temple Hills, Maryland as his address. On or about June 19, 1998, Wills returned to the Radio Shack with complaints that the phone did not function properly. Also on June 19, 1998, a note was left for Alam at Alam's Virginia apartment. The note stated, "Wer'e [sic] sorry our phones were down yesterday 6/18/98 *Please*! Try our line again. Were [sic] open 7 days a week. Jobs!!" At the bottom of the note, the same cell phone number was listed. During the evening of June 19, 1998, Wills phoned his brother. During this conversation,[2] Wills made several statements indicating his plan to stop Alam and referred to both the flier and the cell phone he had activated.

Between June 20, 1998 and June 25, 1998, Alam called the cell phone number listed on the flier to inquire about the job. On June 24, 1998, Wills again phoned his brother and indicated that he was "getting ready to hurt him . . .," allegedly referring to Alam. On or about June 25, 1998, during a phone conversation, Alam agreed to meet an unknown person at Union Station in Washington, D.C. on that date for a job interview.

---

[2]At the time, Wills' brother was in a Virginia state prison and his phone calls were routinely recorded by prison authorities.

On June 25, 1998, Alam drove from Virginia to Union Station in Washington, D.C. for the job interview. On or about June 26, 1998, Wills told his brother on the phone that his business was "takin' care of." Alam's car was found on July 28, 1998 in Temple Hills, Maryland. Alam has not been seen alive since June 25, 1998. The Fairfax County Commonwealth Attorney's Office never prosecuted Wills for burglarizing Alam's apartment.

Prior to trial, Wills moved to dismiss the kidnapping count on the ground that § 1201(a)(1) does not apply as a matter of law when the victim transports himself across state lines. On February 15, 2000, the district court dismissed the kidnapping charge on the ground that it failed to satisfy the jurisdictional component of 18 U.S.C. § 1201(a)(1). The government's motion for reconsideration was denied on March 17, 2000. The government appealed.

II.

We exercise jurisdiction pursuant to 18 U.S.C. § 3731. We review the interpretation of a statute *de novo*. See *Taylor v. Lee*, 186 F.3d 557, 559 (4th Cir. 1999). This case presents the question of whether jurisdiction is established under the Federal Kidnapping Act when a victim, acting because of false pretenses initiated at the instance of the defendant, transports himself across state lines without accompaniment by the alleged perpetrator or an accomplice. Because we are of opinion that the plain text of the Federal Kidnapping Act does not contain an accompaniment requirement, we reverse the district court's decision and remand for further proceedings consistent with this opinion.

The Federal Kidnapping Act was enacted by Congress to stem an increasing tide of interstate kidnappings and to curb an epidemic of criminals who purposely took advantage of the lack of coordination among state law enforcement agencies.[3] See *Chatwin v. United States*, 326 U.S. 455, 462-63 (1946). In 1972, Congress amended the Act,

---

[3]The Act was originally passed in response to the well-known kidnapping of the son of Charles and Ann Lindbergh. See *Chatwin v. United States*, 326 U.S. 455, 463 (1946).

expanding the bases for jurisdiction under it.[4] See Pub. L. No. 92-539, § 201, 86 Stat. 1070 (1972). The 1972 amendment resulted in "interstate transportation of the victim [being] intended to be merely a basis for federal jurisdiction rather than an integral part of the substantive crime." *Hughes*, 716 F.2d at 242 (Widener, J., concurring); see S. Rep. No. 92-1105, *reprinted in* 1972 U.S.C.C.A.N. 4316, 4317-18 ("[T]he law is amended to make the thrust of the offense the kidnapping itself rather than the interstate transporting of the kidnapped person."). The Federal Kidnapping Act currently provides:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when—
>
> > (1)   the person is willfully transported in interstate or foreign commerce . . .
> >
> > (2)   any such act against the person is done within the special maritime and territorial jurisdiction of the United States;
> >
> > (3)   any such act against the person is done within the special aircraft jurisdiction of the United States . . .
> >
> > (4)   the person is a foreign official . . .
> >
> > (5)   the person is among those officers and employees described in section 1114 . . . [shall be punished].

18 U.S.C. § 1201 (a)(1-5).

---

[4]Prior to the 1972 amendment, § 1201 stated:

> (a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away and held for ransom or reward or otherwise . . . shall be punished . . . .

Thus there are currently seven statutorily defined ways to kidnap under the Act and five avenues to establish federal jurisdiction. To establish a violation of § 1201(a), the government must prove that: 1) the victim was seized, confined, inveigled, decoyed, kidnapped, abducted, *or* carried away; 2) the victim was held;[5] and 3) federal jurisdiction.

Wills argues that the Federal Kidnapping Act requires, as a matter of law, that the defendant or someone acting in concert with the defendant, transport the victim across state lines for the jurisdictional requirement under § 1201(a)(1) to be met. The government, in contrast, argues that the plain text of the Federal Kidnapping Act does not contain an accompaniment requirement.[6]

We are of opinion that the interpretation urged by the government is correct. By its terms, § 1201(a) criminalizes kidnappings accomplished through physical, forcible means and also by nonphysical, nonforcible means. This case involves the scope of jurisdiction for kidnappings accomplished through deceit. Kidnappings by inveiglement and decoy are expressly prohibited by the Act. See *United States v. Hughes*, 716 F.2d 234, 238-39 (4th Cir. 1983); see also *United States v. Stands*, 105 F.3d 1565, 1576 (8th Cir. 1997); *United States v. Macklin*, 671 F.2d 60, 64 (2d Cir. 1982). Wills does not dispute the validity of precedent holding that kidnappings by inveiglement or decoy are punishable. See, e.g., *United States v. Boone*, 959 F.2d 1550, 1555 (11th Cir. 1992) ("[T]he Federal Kidnapping Act remains applicable to kidnappings accomplished solely by 'seduction of victims,' *i.e.*, by the inveigling or decoying of kidnapping victims."). Rather, he disputes the scope of the Act and argues that jurisdiction cannot be established unless the defendant or an accomplice physically accompany the victim across state lines when the victim is inveigled or decoyed.

---

[5]No question is raised with respect to the language — "held for ransom or reward or otherwise."

[6]The government also argues that, under 18 U.S.C. § 2(b), Wills caused Alam to travel across state lines. Because we hold that § 1201(a) does not contain an accompaniment requirement and the district court did not base its opinion on any lack of application of § 2(b), we express no opinion on the application of § 2(b) in our analysis.

Wills cites several cases in which the facts describe an inveigle-ment or a decoy that was accomplished through physical accompani-ment across state lines by the kidnapper or an accomplice, but those cases did *not* hold that accompaniment was obligatory. See, e.g., *United States v. Stands*, 105 F.3d 1565, 1576 (8th Cir. 1997) (holding that evidence was sufficient to support finding that victim was invei-gled or decoyed into accompanying kidnapper); *United States v. Jack-son*, 978 F.2d 903, 910-11 (5th Cir. 1992) (holding that jurisdictional requirement was met when co-conspirator moved victim across state lines); *Hughes*, 716 F.2d at 238-39 (holding that statute applied in sit-uation when defendant accompanied victim across state lines with intent to kidnap); *United States v. Macklin*, 671 F.2d 60, 65-66 (2d Cir. 1982) (noting that a kidnapper inveigles or decoys when the kid-napper lures the victim into accompanying him); *United States v. Hoog*, 504 F.2d 45, 51 (8th Cir. 1974) (holding that when kidnapper induces accompaniment with an accomplice by false pretenses, vic-tims are inveigled or decoyed under the Act). We do not contest the reality that many, even most, § 1201(a)(1) kidnapping victims are typ-ically accompanied across state lines by their kidnappers. Contrary to the district court's and Wills' assumption, however, this fact does not directly address the legal question of whether accompaniment is *nec-essary* for the Act to apply.

One Court of Appeals case directly addresses the factual scenario presented by this case. See *United States v. McInnis*, 601 F.2d 1319, 1327 (5th Cir. 1979); cf. *United States v. Boone*, 959 F.2d 1550, 1555 (11th Cir. 1992) (adopting a force-in-reserve requirement and stating that "[t]o determine whether a kidnapping by inveiglement has occurred prior to transportation, a fact-finder must ascertain whether the alleged kidnapper has the willingness and intent to use physical or psychological force to complete the kidnapping in the event that his deception failed"). The Fifth Circuit has held that the Federal Kid-napping Act does not "reach the entirely voluntary act of a victim in crossing a state line even though it is induced by deception." *McInnis*, 601 F.2d at 1327. In *McInnis*, there was an alleged conspiracy, but not a completed kidnapping, to lure the victim across the Mexican border by promising a meeting with a woman he knew. See *McInnis*, 601 F.2d at 1321. When the victim arrived in Mexico, he would then be seized and murdered. See *McInnis*, 601 F.2d at 1321. That case held that allowing voluntary interstate transportation to provide the juris-

dictional link for coverage under the Act would extend the Act far beyond Congress' intent. See *McInnis*, 601 F.2d at 1327. We respectfully disagree.

The intent of Congress can most easily be seen in the text of the Acts it promulgates. Thus, any interpretation of a statute begins with the plain text. See *United States v. Wells*, 519 U.S. 482, 490 (1997) (stating that the "first criterion in the interpretative hierarchy, [is] a natural reading of the full text"). As noted above, the Federal Kidnapping Act currently provides that:

> Whoever unlawfully . . . inveigles, [or] decoys . . . and holds for ransom or reward or otherwise any person, . . . *when the person is willfully transported* in interstate . . . commerce . . . [shall be punished]. 18 U.S.C. § 1201(a)(1) (emphasis added).

The plain language of the Act does not require that the defendant accompany, physically transport, or provide for the physical transportation of the victim. Rather, the Act only requires that the victim "is willfully transported." If Congress wished to make accompaniment by the defendant over state lines a requirement under the Act, it could easily have written the Act to provide for it. See *United States v. Hood*, 343 U.S. 148, 151 (1952) ("We should not read such laws so as to put in what is not readily found there.").

Additionally, as we noted in *Hughes*, nothing in the policy behind the passage of the Act justifies "rewarding the kidnapper simply because he is ingenious enough to conceal his true motives from his victim." *Hughes*, 716 F.2d at 239. The core inquiry in a § 1201 analysis is whether the "kidnapper has interfered with, and exercised control over, [the victim's] actions." *Hughes*, 716 F.2d at 239; see *Chatwin*, 326 U.S. at 464 (noting that "the involuntariness of seizure and detention . . . is the very essence of the crime . . ."). Contrary to the district court's emphasis that "Alam made the decision himself to travel out of Virginia" and Wills' argument that Alam could have abandoned his plan to travel into Washington, D.C., we believe that Wills' actions in securing the cell phone in Washington, D.C., arranging the interview in Washington, D.C., and placing the flier at Alam's home in Virginia, support a finding that Alam was "willfully trans-

ported" within the meaning of the statute. The fact that Alam *could* have seen through the plan or *could* have decided not to explore the job option has no significance under the language of § 1201(a)(1). Thus, the fact that Wills willfully caused unaccompanied travel over state lines is sufficient to confer jurisdiction.

## III.

The order of the district court dismissing Count I for lack of jurisdiction is vacated, and the case is remanded for action consistent with this opinion.

*VACATED AND REMANDED*