UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                            No. 02-4398

FREDERICK LYNN SELLERS,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, District Judge.
(CR-01-58)

Argued: February 27, 2003

Decided: April 11, 2003

Before MICHAEL, KING, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Fletcher Nettles, IV, Assistant Federal Public
Defender, Florence, South Carolina; Henry Morris Anderson, Jr.,
ANDERSON LAW FIRM, P.A., Florence, South Carolina, for Appel-
lant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** J. Strom
Thurmond, Jr., United States Attorney, Alfred W. Bethea, Jr., Assis-
tant United States Attorney, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Following a jury trial, Frederick Sellers was convicted of conspiring to possess and distribute over 50 grams of crack cocaine, in violation of 21 U.S.C. § 846; three counts of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); four counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and kidnapping resulting in death, in violation of 18 U.S.C. § 1201. The district court sentenced Sellers to life imprisonment on both the kidnapping and drug conspiracy counts. Sellers appeals both his convictions and sentence. For the reasons set forth below, we affirm.

I.

The government produced evidence showing that from early 1995 to April of 2001, Sellers sold crack cocaine with his brother James, his cousin Monte Hamilton ("Monte"), and others in the Hampton Street area of Dillon, South Carolina. On December 31, 1997, a government informant named Teresa Leary purchased forty dollars worth of crack from Sellers and his brother on Hampton Street. Later that day, Leary returned to Hampton Street and purchased twenty dollars worth of crack from Sellers. Again on January 8, 1998, Leary purchased twenty dollars worth of crack from Sellers.

The government also introduced evidence that, during the time of the drug conspiracy, Sellers, a convicted felon, possessed firearms in violation of 18 U.S.C. § 922(g)(1). The first incident occurred on May 12, 1997. On that date, Sellers accused Willie McCall of stealing his drugs. As a result of this dispute, Sellers fired shots at McCall, hitting him in the back. Later that year, on October 15, Sellers was present in the parking lot of a local nightclub when a fight broke out between Darlene Woods and another woman. After the nightclub's security

guards attempted to stop the fight, Sellers fired a shot into the ground, handed the gun to Woods, and instructed her to shoot the woman with whom she was fighting. On December 23, 2000, Sellers encountered Andre Blount behind a convenience store. While Blount was talking with someone else, Sellers told Blount that he should "come holler" at him. Sellers then approached, placed his arm around Blount, and shot him.[1]

The kidnapping count and the remaining felon in possession count stemmed from Sellers' activities on December 30, 1998. On that date, Sellers and Monte arrived at the home of Sellers' girlfriend, Keisha Hamilton ("Keisha"). Sellers became upset when he found Johnnie Odom in the home with Keisha. Sellers and Monte then left Keisha's residence, only to return a short time later with a car that they had borrowed in exchange for crack. Sellers insisted that Keisha get in the car, and he proceeded to drive to North Carolina. While on the road, Sellers, who was still upset over Odom's presence at Keisha's home, threatened to kill Keisha and her brother and repeated the phrase "till death do us part." Upon arriving in North Carolina, Sellers, Keisha, and Monte drove to the homes of several of Keisha's relatives, including the house where Keisha's brother resided. They left each residence, however, without harming anyone.

Subsequently, Sellers announced his intention to rob a drug dealer and drove to an area of Fairmont, North Carolina, that was frequented by drug users. Larry Bristow approached the car and indicated that he knew where to find drugs. According to the testimony of Donald Moore, who was standing nearby, a passenger inside the car pointed "something" at Bristow and ordered him into the car. Bristow then entered the car and attempted to help Sellers locate drugs. As they were driving, they encountered Russell Inman, and Bristow convinced Inman to enter the car and assist in the search. After having no success in finding drugs, Sellers declared that they were going back to South Carolina. Alarmed, Inman directed Sellers to a nearby house, where Inman exited the car. After Inman left, Sellers ordered Bristow to get out of the vehicle, but Bristow refused to leave. Sellers then shot Bristow in the leg.

---

[1]These firearm counts will be referred to as the "McCall count," the "Woods count," and the "Blount count," respectively.

Sellers proceeded to drive back to Dillon. After crossing the state line into South Carolina, Sellers stopped the car and pulled Bristow outside. Sellers handed a gun to Keisha and instructed her to shoot Bristow. Keisha complied and killed Bristow.

II.

We first address Sellers' challenge to his kidnapping conviction. Sellers argues that there was insufficient evidence to convict him of kidnapping because, in his view, Bristow consented to being transported across state lines.

In reviewing the sufficiency of the evidence following a conviction, we view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, and we must sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir.), *cert. denied*, 123 S.Ct. 555 (2002). To obtain a conviction for kidnapping under 18 U.S.C. § 1201, the government must prove that (1) the victim was unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away, (2) the victim was held, and (3) the victim was transported in interstate commerce. *United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000). Because the seizure and detention must be involuntary, consent by the victim establishes a defense to kidnapping. *Chatwin v. United States*, 326 U.S. 455, 464 (1946).

Here, it is undisputed that Sellers drove Bristow across state lines, satisfying the jurisdictional element of the kidnapping offense. We must therefore determine whether there was sufficient evidence for the jury to conclude that Bristow was seized and held against his will.

The government argues that Sellers kidnapped Bristow at the point when Bristow first entered the car. The government emphasizes the testimony of Donald Moore, who stated that someone in the car pointed "something" at Bristow and ordered him into the vehicle. Alternatively, the government argues that Bristow was kidnapped when Sellers shot him in the leg, thereby revoking any consent that may have been given.

For his part, Sellers contends that Bristow voluntarily entered the car to help locate drugs. Sellers points to evidence indicating that Bristow helped persuade Russell Inman to enter the vehicle and assist in the search. Sellers also notes that after he announced his intention to return to South Carolina, Bristow did not try to exit the vehicle at the next stop. Even when Sellers explicitly ordered Bristow to leave the car, Bristow refused to do so.

We find that a reasonable jury could determine that the kidnapping occurred when Bristow first entered the vehicle because there was evidence that he did so against his will. Furthermore, a reasonable jury could also find that any prior consent that may have been given was revoked when Sellers shot Bristow in the leg. We therefore conclude that the government presented sufficient evidence to support Sellers' conviction for kidnapping.

## III.

Sellers also asserts that the kidnapping count and its associated felon in possession count (counts 8 and 10) were improperly joined with the drug conspiracy, drug possession, and other felon in possession counts. Before trial, Sellers moved to sever counts 8 and 10, arguing that they were unrelated to the remaining counts. The district court denied the motion.

Joinder of offenses is permissible under Rule 8(a) of the Federal Rules of Criminal Procedure and is used for purposes of judicial economy, easing the burden and expense associated with separate trials.[2] Once offenses have been joined, Rule 14 of the Federal Rules of Criminal Procedure authorizes a district court to sever the counts if it appears that the defendant will be prejudiced by trying the counts

---

[2]Rule 8(a) of the Federal Rules of Criminal Procedure provides:

Joinder of offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

together.[3] Because joinder under Rule 8 is a question of law, we review this question *de novo*. *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003). If the joinder was proper, we review the district court's denial of a severance motion for an abuse of discretion. *Id.*[4]

A.

Sellers maintains that joinder of counts 8 and 10 was improper because his decision to travel to North Carolina was unrelated to the activities encompassed by the drug and other firearm counts. Rather, he claims that his actions were motivated by other considerations, such as his anger towards Keisha.

We find that the joinder of counts 8 and 10 with the drug counts was proper under Rule 8(a) because these counts involved behavior that was part of "a common scheme or plan"—the drug conspiracy. During the time of this conspiracy, Sellers obtained a car in exchange for crack, traveled to North Carolina, and began searching for drugs. Bristow was unable to help Sellers find drugs, and Sellers thereafter kidnapped him and ordered his execution. The presence of another motivating factor, such as Sellers' asserted anger at Keisha, does not render the joinder improper. Whatever Sellers' original motivations may have been, he was nevertheless engaged in drug activities at the time he kidnapped Bristow. This is sufficient to warrant joinder of the kidnapping counts with the drug counts.

---

[3]Rule 14 of the Federal Rules of Criminal Procedure provides, in pertinent part:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

[4]The basis of Sellers' pre-trial motion is not clear. While the motion specifically referred to Rule 14 (requiring an abuse of discretion review of the district court's denial of the severance motion), it could also be construed as alleging a misjoinder under Rule 8 (requiring *de novo* review of the initial joinder). Given the uncertainty as to the basis of the motion, we will provide Sellers with the benefit of review under both Rule 8 and Rule 14.

Likewise, counts 8 and 10 were properly joined with the remaining firearm counts because Sellers used firearms in furtherance of the drug conspiracy. The McCall count is clearly related to the drug conspiracy because Sellers shot McCall over a drug dispute. As to the Woods and Blount firearm counts, the record does not specifically connect them to drug-related matters. However, we have recognized that firearms are "tools of the trade in illegal narcotics operations." *United States v. White*, 875 F.2d. 427, 433 (4th Cir. 1989). Furthermore, the record is replete with evidence that Sellers carried firearms during the time frame of the charged conspiracy and in relation to his drug activities. Because Sellers used firearms in furtherance of his participation in the drug conspiracy, counts 8 and 10 were properly joined with the firearm counts.[5]

B.

Having determined that the initial joinder was proper, we turn to the question of whether Sellers was prejudiced by the district court's denial of his Rule 14 severance motion. In making this determination, we look to several factors, including the factual overlap between the counts and the district court's use of proper limiting instructions. *See United States v. Larouche*, 896 F.2d 815, 831 (4th Cir. 1990).

First, there is substantial evidentiary overlap between counts 8 and 10 and the drug counts. Because Sellers kidnapped Bristow over drug-related matters, evidence of Sellers' drug activities would likely

---

[5]To the extent that Sellers also challenges the joinder of the various firearms counts with each other, we conclude that joinder was proper. As explained above, Rule 8(a) is satisfied because firearms are tools of the drug trade. In addition, each of the firearm counts encompassed behavior that occurred during the time frame of the charged conspiracy and that was part of a common scheme or plan. Furthermore, the firearm counts were properly joined with each other under Rule 8(a) because they are of the *same* character. Under the language of the rule, the fact that the firearm counts did not factually overlap is simply irrelevant. We also conclude that, under Rule 14, Sellers was not prejudiced by the joinder of the several firearm counts with each other. While these counts called for different witnesses and evidence, the evidence as to each count was straightforward. The court's limiting instructions also cured any potential jury confusion.

have been admissible during a separate trial on the kidnapping charges to demonstrate Sellers' motive. *See* Fed. R. Evid. 404(b). Similarly, evidence of the McCall firearm count would likely have been admissible during separate trials on the kidnapping and drug counts. *See id.* The evidence of the drug-related shooting of McCall is probative of Sellers' state of mind in kidnapping Bristow and ordering his death over a drug-related matter.

While the relationship of Counts 8 and 10 with the Woods and Blount firearm counts is not as clear, we are not persuaded that Sellers was prejudiced by the joinder of these offenses. The district court provided the jury with adequate limiting instructions, explaining that it must consider each offense separately. J.A. 464, 491. Any potential jury confusion would have been cured by these instructions. Therefore, the district court did not abuse its discretion in refusing to sever counts 8 and 10 from the drug and firearm counts.

IV.

Sellers also appeals the district court's decision to enhance the drug conspiracy conviction based upon the murder of Bristow. The district court determined that Bristow's killing was drug-related and was therefore part of the same course of conduct as the drug conspiracy. Sellers argues that he did not travel to North Carolina to engage in narcotics activities. Rather, he urges us to consider Bristow's murder to be a result of his anger towards Keisha. We review the district court's findings of fact, including determinations of relevant conduct, for clear error. *See United States v. Pauley*, 289 F.3d 254, 258 (4th Cir. 2002).

Under the United States Sentencing Guidelines, the district court applied the murder cross-reference found in the drug guideline (USSG § 2D1.1(d)(1)) and assigned Sellers a Total Offense Level of 43, resulting in a life sentence.

Cross-references, of course, are applied only to relevant conduct. Relevant conduct includes:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

USSG § 1B1.3(a).

Because the conviction in this case is for a drug offense that requires grouping under § 3D1.2(d), relevant conduct may be determined according to § 1B1.3(a)(2). *See Pauley*, 289 F.3d at 258. This section defines relevant conduct as conduct that is "part of the same course of conduct or common scheme or plan" as the offense of conviction.

We conclude that Sellers' actions in murdering Bristow, which were inextricably linked to the drug conspiracy, constituted "part of the same course of conduct" and were part of a "common scheme or plan." Sellers' activities in North Carolina, far from being isolated events, were performed in furtherance of the drug conspiracy.

Because Bristow entered Sellers' vehicle for the express purpose of helping Sellers find drugs and was subsequently killed after he failed to do so, the district court's determination that Bristow's murder was "part of the same course of conduct" as the drug conspiracy was not clearly erroneous.[6] Accordingly, we find that the district court properly enhanced the drug conspiracy conviction based upon the murder of Bristow.

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[6]The government asserts that relevant conduct should be determined according to USSG § 1B1.3(a)(1), which defines relevant conduct as acts "that occurred during the commission of the offense of conviction." Because we find that the murder of Bristow occurred during the commission of the drug conspiracy, the district court, as an alternative basis, could have properly enhanced the sentence under USSG § 1B1.3(a)(1).